**Mohammed Shafayet HOSSAIN,
Plaintiff,**

v.

**RAUSCHER PIERCE REFSNES, INC.,
d/b/a Clearing Service; and Regional
Operations Group, Inc., Defendants.**

No. 97–1380–JTM.

United States District Court,
D. Kansas.

April 9, 1999.

Akexander B. Mitchell, II, Klenda, Mitchell Austerman & Zuercher, L.L.C., Wichita, KS, for plaintiff.

John W. Shaw, Matthew V. Bartle, Jeffrey A. Ziesman, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas, MO, for defendants.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

Mohammad Shafayet Hossain sued Rauscher Pierce Refsnes, Inc. (RPR) and Regional Operations Group, Inc. (ROG) seeking to recover funds defendants allegedly withdrew from the plaintiff's account

without his permission. In Count 1 of his complaint, plaintiff contends he was a third-party beneficiary to a clearing agreement between defendants and Primeline Securities, the introducing broker. In Count 2 plaintiff contends defendants were bailees who, without either authority or his consent, negligently allowed plaintiff's funds to be deposited into an account other than his own and electronically wired to others. Defendants move for judgment on the pleadings with respect to Count I and summary judgment with respect to Count II.

Both parties have included, along with their pleadings, other materials such as a copy of the disputed contract, various affidavits, and other documents. Fed. R.Civ.P. Rule 12(c) states:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Accordingly, the court will treat both motions as motions for summary judgment.

### I. *Standard for Summary Judgment*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden to show that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has made this initial showing, the burden shifts to the non-moving party to designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A party may not simply rely on the allegations of its pleadings, but must present evidence that establishes the existence of a genuine issue of material fact. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied*, 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). The non-moving party's evidence is to be believed; all justifiable inferences are to be drawn in its favor; and its non-conclusory version of any disputed facts is assumed to be correct. *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal Publ., Inc.*, 63 F.3d 1540, 1545 (10th Cir.1995), *cert. denied*, 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

### II. *Facts*

Plaintiff was a customer of Primeline Securities Corp., a securities broker dealer. On or about September 7, 1995, the defendants and Primeline entered into a "Fully Disclosed Clearing Agreement". Under the agreement, the defendants were to perform cashiering and various trade clearing functions for Primeline and its customers, including maintenance of customer accounts.

Section 10.8 of the clearing agreement provides as follows:

> The imposition or allocation of any burden or duty on or to one or the other party by this Agreement does not and is not intended to impose or create any burden, right or duty in favor of or for the benefit of any person or entity not a party to this Agreement.

Between March 25, 1996 and February 17, 1997, plaintiff wrote checks totaling $151,000 payable to RPR, and delivered them to Primeline. Primeline then forwarded the checks to the defendants, who, at Primeline's direction, deposited the checks into an account in the name of "Nasir Siddiqi and Mohammad Hossaria," effectively converting plaintiff's funds to the use and benefit of Primeline. The plaintiff claims he has never used either name as an alias. Ultimately, Primeline was in bankruptcy, plaintiff discovered the

loss of his funds, and brought this action seeking to recover from defendants. Additional facts are discussed as necessary in the analysis.

## III. *Analysis*

### A. Choice of Law

█ Section 10.1 of the agreement contains a choice of law provision which states:

This agreement shall be governed by and construed in accordance with the laws applicable to contracts made and to be performed within the State of New York.

Where jurisdiction is founded on diversity, the court will determine the enforceability of the provision through the forum state's choice of law rules. *Vitkus v. Beatrice Co.,* 127 F.3d 936, 941 (10th Cir.1997).

█ In Kansas, parties to a contract generally may determine which state's laws will govern the rights and duties of the parties, as long as the chosen state bears a "reasonable relation" to the transaction. *Central Kansas Credit Union v. Mutual Guar. Corp.,* 102 F.3d 1097, 1108 (10th Cir.1996); *see also* K.S.A. § 84–1–105(1). Given the current state of the record, the court cannot determine whether or not New York has some reasonable relation to the transactions in question. However, if the law in Kansas does not conflict with the law of the other jurisdiction, the court may apply Kansas law. *Shutts v. Phillips Petroleum Co.,* 240 Kan. 764, 767, 732 P.2d 1286 (1987) (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 816, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). Kansas will not apply the law of another state if such application is contrary to the settled public policy of Kansas. *Hartford Accident & Indem. Co. v. American Red Ball Transit Co.,* 262 Kan. 570, 574, 938 P.2d 1281 (1997).

The parties both argue there are no material inconsistencies between Kansas and New York law in this area and that the same outcome will obtain using either state's laws. However, the court's own research indicates that New York law and Kansas law do not so clearly lead to the same conclusion and that the Kansas Supreme Court would likely decline to apply New York law for public policy reasons as further discussed below. The court, will thus apply Kansas law.

### B. Third–Party Beneficiary Claim

Plaintiff claims the defendants are liable for failing to keep and hold his money in trust for his account pursuant to the clearing agreement with Primeline. The defendants raise two defenses: (1) Kansas would not recognize a third-party beneficiary claim against a clearing house broker; and (2) Section 10.8 of the clearing agreement clearly disallows third-party beneficiaries.

█ One may sue for damages resulting from the breach of a contractual obligation as a third-party beneficiary if he or she was an intended beneficiary of that obligation. *Wolfgang v. Mid–America Motorsports, Inc.,* 111 F.3d 1515, 1524 (10th Cir.1997)(applying Kansas law). The person need not have been a party to the contract or to even have been aware of it when it was made. *Id.* The person must show, however, not only that there has been a breach of the contract, but that there exists a provision in the contract that operates to his or her benefit. *United States v. United Servs. Automobile Ass'n,* 968 F.2d 1000, 1002 (10th Cir.1992)(applying Kansas law).

Kansas has recognized third-party beneficiary claims in circumstances similar to those in this case. The plaintiffs in *Keith v. Schiefen–Stockham Ins. Agency, Inc.,* 209 Kan. 537, 538–39, 498 P.2d 265 (1972) were the survivors of workers who were killed on the job. They sued the decedents' employer's insurance broker for failing to purchase workmen's compensation policies pursuant to a contract between insurance broker and the employer. *Id.* The court noted it had long recognized the

rule that "a person may avail himself of a promise made by a second party to a third party for the benefit of the first, although the first was not a party to it and had no knowledge of it when made." *Id.* at 544–45, 498 P.2d 265. The court held that the allegations in the plaintiff's petition were sufficient to state a cause of action against the defendant broker for failing to procure insurance. *Id.* at 541, 498 P.2d 265.

The relationship between a clearing house broker and the introducing broker is analogous to the employer/insurance broker relationship in *Keith.* As a result, the court believes the Kansas Supreme Court would recognize third-party beneficiary claims against a clearing house broker under the facts of this case.

Defendants next argue that section 10.8 of the clearing agreement precludes third-party beneficiary claims. Clearing brokers are regulated both internally by the National Association of Securities Dealers and externally by the Securities and Exchange Commission. Plaintiff claims these regulations establish a fiduciary relationship between the broker and the customer. SEC Rule 15c 3–3 and NASD Rule 2330(d) impose duties on brokers to take certain measures to safeguard a customer's funds and securities. *See, e.g.,* 17 C.F.R. § 240.15c3–3(b)(1); NASD Manual Rule 2330(d).

"Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary." *Arst v. Stifel, Nicolaus & Co.,* 86 F.3d 973, 979 (10th Cir.1996). The fiduciary has the primary duty to act for the benefit of another. *Id.* Section 1.4(d) of the clearing agreement provides as follows:

> For the purposes of the Securities Investor Protection Act of 1970 and the Securities and Exchange Commission financial responsibility rules, Customers are Customers of ROG and not the Correspondent.

The agreement, a form contract drafted by the defendants, supports the existence of a fiduciary relationship with the plaintiff.

■ Assuming, then, the existence of the relationship, the next question the court must address is whether the language of the contract itself bars this claim. Generally, a promisor may assert against a beneficiary any defense he or she could assert against the promisee if the promisee sued on the contract. *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 370, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984); *see also Automobile Ins. Co. v. Barnes–Manley Wet Wash Laundry Co.,* 168 F.2d 381, 384 (10th Cir.1948) (promisor under a third party beneficiary contract may assert equitable defenses against the third party beneficiary). However, this general rule should not be applied so inflexibly as to defeat the intention of the parties. *Schneider,* 466 U.S. at 370–71, 104 S.Ct. 1844.

> Where the language of the contract or the circumstances under which it was executed, establish that the parties have provided that the right of the beneficiary is not to be affected by any defenses that the promisor might have against the promisee, the rule is inapplicable.

*Id.* at 371, 104 S.Ct. 1844.

■ A clearing agreement which disavows the intent to create third–party beneficiaries is nearly nonsensical. An investor must be a beneficiary of a clearing agreement between the introducing broker and clearing broker. Without the intent to benefit the investor, there would be no need for the clearing agreement. As a matter of public policy, this clause renouncing any intent to benefit third parties must fail. A clearing broker cannot contract away duties owed to an investor which the law requires him to perform. Contracts that are contrary to law and public policy are void and unenforceable. *Murray v. Brown,* 177 Kan. 139, 141, 276 P.2d 344 (1954); *see also Richards v. Bryan,* 19 Kan.App.2d 950, 958–59, 879 P.2d 638 (1994)("A contract will be en-

forced as written so long as terms are certain and do not conflict with pertinent statutes or with public policy").

Although this particular clause of the clearing agreement fails, all other provisions may be enforceable, provided they do not offend public policy. Provision 10.2 of the clearing agreement provides for such a situation:

> **Invalid Provisions.** To the extent any provision of this Agreement is inconsistent with or in violation of an Applicable Rule, that provision shall be deemed deleted as part of this Agreement and shall not otherwise affect any other provision of this Agreement. The parties shall use their best efforts to agree upon a valid and enforceable provision which shall be a reasonable substitute for such deleted provision in light of the tenor of this Agreement. Any provision of this Agreement that is invalid or unenforceable in any jurisdiction shall, with respect to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without affecting the remaining provisions of this Agreement or affecting the validity or enforceability of that provision in any other jurisdiction.

Defendants rely upon two cases in support of their argument that section 10.8 is dispositive. In *Nepco Forged Prods., Inc. v. Consol. Edison Co. of New York, Inc.*, 99 A.D.2d 508, 470 N.Y.S.2d 680 (N.Y.App. Div.1984), the subtenant plaintiff claimed to be a beneficiary of a utility contract between his landlord and Consolidated Edison (Con Ed). *Id.* at 680–81. The contract contained a clause disavowing any intent to benefit third parties. *Id.* at 681. The landlord moved to dismiss plaintiff's claims against it and the appellate court granted the motion. *Id.* The court held that where a provision exists in a contract negating intent to benefit third parties, that provision is decisive. *Id.*

*Nepco* can be distinguished from the present action. The landlord was under no duty imposed by law to provide utility service to its subtenants. The duty to provide utility service was a contractual one on the part of Con Ed. Furthermore, the holding of the court in *Nepco* was unnecessary. There was no valid third-party beneficiary claim asserted against the landlord. The plaintiff did not allege a breach on behalf of the landlord or make a public policy argument as to why the landlord should be held liable. The court did not bar all remedies under the contract, it simply dismissed the landlord from the case. The plaintiff's claim against Con Ed was not addressed.

Defendants' reliance on the second case, *Laird Noller v. General Motors Corp.*, 244 Kan. 612, 772 P.2d 271 (1989), is also misplaced. Laird Noller ("Noller"), a Ford truck dealer, attempted to buy the assets of Jay Beard Trucks, Inc. ("Beard"), a GMC truck dealer. *Id.* at 615, 772 P.2d 271. The dealership agreement between Beard and GMC provided that the sale of Beard's assets would terminate the agreement; however, GMC had contracted not to arbitrarily refuse to grant a new owner a franchise. *Id.* at 613, 772 P.2d 271. GMC refused to approve the transfer to Noller, and Beard subsequently sold his assets to other parties who received GMC's approval. *Id.* at 615–16, 772 P.2d 271. Noller filed suit against GMC, claiming to be a third-party beneficiary of the agreement between GMC and Beard. *Id.* at 616, 772 P.2d 271. The district court determined Noller was an incidental rather than an intended beneficiary and therefore had no standing to sue for breach of contract. *Id.* The Kansas Court of Appeals reversed, finding Noller was an intended beneficiary of the contract. *Id.*

The Kansas Supreme Court reversed the court of appeals and dismissed Noller's third-party claim, finding the parties to the franchise agreement did not intend to benefit a third party and Noller was not entitled to sue for contractual benefits. *Id.* at 617–18, 772 P.2d 271. The Court noted it had long held: " 'Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person

must be clearly expressed in the contract.'" *Id.* at 617, 772 P.2d 271 (quoting *Cornwell v. Jespersen,* 238 Kan. 110, 115–16, 708 P.2d 515 (1985)).

A major difference exists between *Noller* and the case before this court. Unlike the dealership agreement in *Noller,* the clearing agreement in this case has no purpose if not to benefit the investors the defendants are serving. In *Noller,* the Kansas Supreme Court found Noller was not an intended beneficiary. The plaintiff in this case could be nothing but an intended beneficiary. Here, the clause is evidence of the intent of the parties, but as part of a form contract it is not conclusive. In any event, as previously noted, the Kansas Supreme Court would decline to enforce it for public policy reasons.

A genuine issue of material fact remains for trial. Defendants' motion for summary judgment on plaintiff's third party beneficiary claim is denied.

## C. Defendants Acting as Bailees

 Plaintiff claims the defendants acted as bailees by accepting his funds for deposit.[1] The defendants claim they cannot be bailees with respect to plaintiff's funds because there was no intent on the part of the defendants to enter into such an arrangement. *Beyrle v. Finneron,* 199 A.D.2d 1023, 606 N.Y.S.2d 467, 468 (1993). (No bailment was formed because there was no intention of the parties to return the goods after their use.)

 In Kansas, a bailment involves the "delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor re-

claims it." *M. Bruenger & Co. v. Dodge City Truck Stop, Inc.,* 234 Kan. 682, 685, 675 P.2d 864 (1984) (quoting 8 Am.Jur.2d, *Bailments* § 2). A "bailee" is the "person who receives the possession or custody of property under circumstances constituting a bailment." *Id.* A "bailor" is the "person from whom the property is thus received." *Id.* In this case plaintiff claims he was the bailor of the money he deposited with the defendants. For the reasons set forth below, plaintiff's bailment theory cannot withstand the defendants' motion to dismiss.

Plaintiff's bailment theory fails because of the way the court must classify his deposit with the defendants. In the banking industry deposits of money take one of two forms—general deposits or special deposits. *Bloomheart v. Foster,* 114 Kan. 786, 221 P. 279, 280 (1923).

"Deposits made with banks may be divided into two classes, those in which the bank becomes bailee of the depositor, the title in the thing deposited remaining with the depositor, and that kind peculiar to the banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker, and the latter, in consideration of the loan of the money, and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand. * * * A special deposit of money in a bank is made where moneys, such as bills in packages or specie in boxes, are intrusted to the bank, not to be used, but to be kept safely, and *specifically* returned. An ordinary bank deposit is made when a voluntary credit is taken with the bank, and for which no bank note, bill, or similar evidence of debt is given, and for which there exists a right to draw unconditionally."

---

1. While the plaintiff is not permitted a double recovery, the bailment theory is another contract theory the plaintiff may argue in claiming he was damaged by defendants. Bailment cases in Kansas usually are based on

tort, but the bailor has a choice of remedies and may waive the tort and bring his action in contract. *Continental Ins. Co. v. Windle,* 214 Kan. 468, 471, 520 P.2d 1235 (1974).

*Id.* (quoting *Newmark on Bank Deposits*, § 11) (emphasis added).

"A special deposit is one for safe-keeping; and the depositor is entitled to the return of the *identical* money or thing deposited." *Mid–City National Bank v. Mar Bldg. Corp.*, 33 Ill.App.3d 1083, 339 N.E.2d 497, 503 (1975) (citations omitted) (emphasis added); *Buena Vista Loan & Sav. Bank v. Bickerstaff,* 121 Ga.App. 470, 174 S.E.2d 219, 222 (1970) (A special deposit may include "a sealed package of money, or property or securities" delivered to an individual or entity "for the purpose of having the same safely kept, and the *identical thing* returned.") (emphasis added). General deposits differ from special deposits in that "[t]he identical money deposited is not to be returned—only its equivalent; and the money deposited becomes the money of the bank." *Bloomheart*, 221 P. at 281.

" 'Where a deposit is made generally the relation between the bank and depositor is that of debtor and creditor; but where the deposit is made specially, the relation between the bank and the depositor is that of bailor and bailee.' " *Id.* (quoting *Michie on Banks and Banking*, at 1297).

The defendant's position with regard to plaintiff's deposited check can be likened to that of a bank that has accepted a general deposit. When plaintiff deposited his money with the defendant, he did not intend for the defendant to return the identical money back to him. To the contrary, plaintiff deposited the money with hopes of increasing the amount of his deposit. Because the deposit cannot be classified as a special deposit, no bailment relationship existed between plaintiff and defendant. *Bloomheart*, 221 P. at 282. Therefore, the defendants' motions for summary judgment with regard to Count II of plaintiff's complaint are granted.

IT IS ACCORDINGLY ORDERED this 8th day of April, 1999, that RPR's and ROG's motions for summary judgment

against Hossain are denied with respect to Count I and granted with respect to Count II of Hossain's complaint.