**PHILIPPINE AMERICAN LIFE IN-SURANCE and Philam Insurance Company, Plaintiffs,**

v.

**RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, Defendant,**

**C.E. Machine Co., Inc., Third–Party Defendant and Fourth–Party Plaintiff,**

**Metal Improvement Company, Inc., Fourth–Party Defendant.**

**Civil Action No. 02–2068–CM.**

United States District Court, D. Kansas.

Feb. 26, 2003.

James E Ramsey, Cooling & Herbers, P.C., Kansas City, MO, for Plaintiffs.

Jeff C. Spahn, Jr., Martin, Pringle, Oliver, Wallace & Bauer, LLP, Wichita, KS, Timothy J. Finnerty, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, Defendants.

Don D. Gribble, II, Hite, Fanning & Honeyman L.L.P., Robert W. Kaplan, Kaplan, McMillan & Harris, Wichita, KS, Scott R. Schillings, Cozen & O'Connor, Wichita, KS, for Third Party Plaintiff/Third Party Defendant.

Douglas N. Ghertner, Slagle, Bernard & Gorman, P.C., Kansas City, MO, for Third Party Defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiffs Philippine American Life Insurance (PALI) and Philam Insurance Company (Philam) filed suit against defendant Raytheon Aircraft Company (Raytheon) alleging various contract and tort claims. Defendant Raytheon asserted a third-party complaint, adding C.E. Machine Co., Inc. (CE Machine) as a third-party defendant. CE Machine asserted a fourth-party complaint, adding Metal Improvement Company, Inc. (Metal Improvement) as a fourth-party defendant. This matter is before the court on defendant Raytheon's Motion to Dismiss (Doc. 6), plaintiffs' Motion to File Claim Against Fourth–Party Defendant Metal Improvement Company, Inc. (Doc. 42), and plaintiffs' Supplemental Motion to Amend Complaint (Doc. 45).

- Background

This action arises out of an incident occurring on October 19, 2000, involving plaintiff PALI's airplane, a Super King Air 350, which plaintiff Philam insured. On that day, the airplane departed from the Seletar Airport in Singapore. After taking off, the control tower informed the pilot that the left main landing gear had not retracted. After unsuccessfully trying to recycle the gear, the crew performed an emergency landing with the nose and right gear in the down and locked position, but with the left gear unsafe. Upon touchdown, the left gear completely collapsed and caused extensive damage to the gear and the rest of the plane. There were no personal injuries involved-the only damage was to the airplane.

Plaintiffs claim that the cause of the landing gear failure was the left gear actuator clevis. As alleged by plaintiffs, defendant Raytheon had issued a Mandatory Service Bulletin (MSB) in June 1997 for replacement, under warranty, of the main landing gear actuator clevis on the left and right main landing gear of the airplane. Each actuator clevis was to be strengthened to prevent fatigue cracking. Defendant Raytheon stated in the MSB that, without the clevis replacement, airplane damage and personal injury could occur. In March 1998, pursuant to the MSB, the replacement clevis on both the left and right main landing gear were installed on the airplane by A. Soriano Aviation, Inc. (Soriano Aviation), defendant Raytheon's authorized service center for the Philippines. Plaintiffs assert that the clevis was "defectively manufactured and/or improperly and negligently installed." (Compl.¶ 10).

- Motion to Dismiss

 - Standard

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct.

1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff, *Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir. 1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

● Discussion

Defendant Raytheon argues that plaintiffs' claim for breach of implied warranty (Count III), non-delegable duty (Count V), strict liability (Count VII), negligent misrepresentation (Count IX), and negligence (Count X) should be dismissed. Defendant Raytheon asserts that Counts V, VII, IX, and X are barred by the economic loss doctrine, and that Count III should be dismissed because the MSB is not a "good" as defined under the Uniform Commercial Code (UCC). To determine whether plaintiffs' negligence-type claims are barred, the court must determine whether Kansas law or Singapore law applies.

● Choice of Law

Defendant Raytheon asserts that the substantive law of Kansas applies, while plaintiffs argue that Singapore law applies. Federal courts sitting in diversity must apply the choice of law provisions of the forum state to ascertain which state or foreign law should apply to an action. *Booth v. Elec. Data Sys. Corp.,* 799 F.Supp. 1086, 1089 (D.Kan.1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Thus, the court looks to the choice of law rules in Kansas.

The court begins with the general proposition that Kansas courts apply the law of the state where the tort occurred. *Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). The damage to the airplane in this case occurred in Singapore. However, the court's inquiry does not end here. There are circumstances in which Kansas courts apply Kansas law, notwithstanding that the tort occurred in another jurisdiction. For example, under Kansas choice of law rules, "[T]he law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." *Sys. Design & Mgmt. Info. Inc. v. Kan. City Post Office Employees Cred. Union,* 14 Kan.App.2d 266, 269, 788 P.2d 878, 881 (1990). In addition, Kansas choice of law rules provide that Kansas courts will not apply the law of another state if such application is contrary to the settled public policy of Kansas. *See, e.g., Hartford Accident & Indem. Co. v. Am. Red Ball Transit Co.,* 262 Kan. 570, 574, 938 P.2d 1281 (1997). The court must therefore look to the substantive law in both Kansas and Singapore to determine which law applies in the circumstances of this case.

The court first turns to the substantive law in Kansas. In *Koss Construction v. Caterpillar, Inc.,* 25 Kan.App.2d 200, 960 P.2d 255 (1998), the Kansas Court of Appeals adopted the economic loss rule as set forth in *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In doing so, the Kansas Court of Appeals held that "a commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damage to the goods themselves." *Koss,* 25 Kan.App.2d at 207, 960 P.2d at 260. Since *Koss,* this rule has been consistently followed by both state and federal courts.

See, e.g., Ministic Air Ltd. v. Raytheon Aircraft Co., 2001 WL 309400, at *2 (D.Kan.2001); NW Ark. Masonry, Inc. v. Summit Specialty Prods., Inc., 29 Kan. App.2d 735, 741, 31 P.3d 982, 987 (2001); Jordan v. Case Corp., 26 Kan.App.2d 742, 743, 993 P.2d 650, 651 (1999). Thus, it is clear under Kansas law that a party may not recover damages for harm to a defective product under negligence or strict liability theories.

The law which Singapore courts would apply is less clear. In response to defendant Raytheon's motion, plaintiffs submit the affidavit of Lok Vi Ming, Advocate and Solicitor of the Supreme Court of Singapore, to testify about whether Singapore law would bar tort claims where only economic loss is claimed. Plaintiffs argue that Mr. Ming's affidavit supports the proposition that, under Singapore law, a party may bring tort claims for its damages, even if the damages are limited to economic loss.

Mr. Ming first states that Singapore has no equivalent doctrine to the economic loss rule as set forth in East River and Koss. (Ming Aff. ¶ 4). However, according to Mr. Ming, courts in the United Kingdom, whose decisions have persuasive effect on Singapore courts, have adopted the approach that a cause of action in negligence is not available for pure economic loss. (Id. ¶ 6). On the other hand, Mr. Ming testifies that the Singapore Court of Appeal, which is the highest local court, has taken the approach that, in a relationship of "sufficient proximity," a duty of care to avoid causing economic loss may arise under the tort of negligence. (Id. ¶ 7). For support, Mr. Ming cites two cases in which the Singapore Court of Appeals held that the management corporations of building projects could state negligence actions against developers, architects, or engineers to repair defects in construction before any further damage or injury could occur, notwithstanding that such loss is pure economic. (Id.).

The court turns to the choice of law rule previously stated herein, that "the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." Sys. Design, 14 Kan.App.2d at 269, 788 P.2d at 881. In applying that rule, the court finds that Mr. Ming's affidavit does not establish whether plaintiffs could assert a tort cause of action for purely economic loss under Singapore law. In other words, the court cannot determine from Mr. Ming's affidavit whether Singapore courts would follow the decisions of the United Kingdom courts, or whether Singapore courts would apply the two building defects cases such that plaintiffs in this case could assert negligence-type claims. Thus, plaintiffs have not expressly shown that a different law governs the substantive issues in this case. Because there exists doubt as to what law Singapore would apply which, in turn, casts doubt on whether Singapore's law differs from Kansas law, the court will apply Kansas law.

■ Even if the court accepted plaintiffs' argument that Singapore allows tort claims in this situation, the court still would apply Kansas law because Singapore law (as argued by plaintiffs) is contrary to the settled public policy of Kansas. See Hartford Accident, 262 Kan. at 574, 938 P.2d at 1281. In Hossain v. Rauscher Pierce Refsnes, Inc., 46 F.Supp.2d 1164 (D.Kan.1999), the court declined to apply New York law, even though the parties' contract specifically stated that New York law would apply. In Hossain, the court cited Hartford for the proposition that Kansas will not apply the law of another state if such application is contrary to the settled public policy of Kansas. Id. at 1167. The court then determined that New

York law and Kansas law were different on the issue of whether plaintiff could assert a third-party beneficiary claim. *Id.* Reasoning that the Kansas Supreme Court would likely decline to apply New York law for public policy reasons, the court applied Kansas law. *Id.*

In this case, the court concludes that it is settled public policy in Kansas that a plaintiff cannot pursue a tort cause of action if the only damage suffered was to the product itself. *See Koss,* 25 Kan.App.2d at 207, 960 P.2d at 260. Clearly, the law of Singapore, as plaintiffs allege, is contrary to that settled policy. Assuming plaintiffs are correct that Singapore law allows such a cause of action to proceed, the court is compelled by Kansas choice of law rules to apply Kansas substantive law to this case. The court therefore turns to the issue of whether plaintiffs' tort claims are barred under Kansas law.

- Application of the Economic Loss Doctrine

■ Plaintiffs argue that the economic loss doctrine does not apply in a warranty repair case such as this, where the "purchaser" has no recourse but to "buy" the part from the authorized dealer and have it installed by an authorized service center. Plaintiffs contend that *East River* and *Koss* are not applicable because those cases are based upon the premise that the buyer and seller will bargain through contract for warranty and product value.

Plaintiffs provide no authority for the position that the economic loss doctrine is inapplicable where a component part is provided as a free replacement under a mandatory service bulletin. The rationale of the economic loss doctrine, as set forth in *East River,* seems equally applicable in this circumstance: "[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Koss,* 25 Kan.App.2d at 204, 960 P.2d at 258 (citing *East River,* 476 U.S. at 871, 106 S.Ct. 2295). Further, the loss about which plaintiffs in this case complain is purely economic. *See id.* at 207, 960 P.2d at 260 ("[D]amage which is limited to the defective product itself is essentially economic loss.").

■ However, at this juncture in the litigation, the court is hesitant to apply the economic loss doctrine to bar plaintiffs' tort claims. The economic loss doctrine is premised on the notion that parties protect against the risk of economic loss during contract negotiations through warranty provisions and price adjustments rather than attempt to recover under tort law after a loss occurs. In this case, the court is lacking information and evidence regarding the parties' contractual obligations that arose from either the initial purchase contract or later agreements-either express or implied. Looking only to the pleadings, the court cannot say as a matter of law that plaintiffs had an opportunity to bargain for warranties and product value since the clevis was replaced free of charge pursuant to a mandatory service bulletin.[1] Absent evidence concerning the parties' contractual relationship, the court must deny defendant Raytheon's motion to dismiss Counts V, VII, IX, and X at this time.

- Count III (Breach of Implied Warranty)

Plaintiffs allege in Count III that the MSB contained installation instructions and that defendant Raytheon impliedly warranted the instructions. Specifically, plaintiffs allege that "[i]n providing the

---

1. This is not to say that, if plaintiffs have no remedy under contract law, then plaintiffs necessarily may pursue a tort action. Rather, the court is merely concerned with the issue of whether plaintiffs had an *opportunity* to bargain.

Mandatory Service Bulletin, Raytheon impliedly warranted that the installation instructions contained therein would be fit for their particular purposes and merchantable, in that they would be clear and accurate and sufficient to instruct their Authorized Service Centers, including A. Soriano, in the proper safe and airworthy installation of the Clevis." (Compl.¶ 26).

Defendant Raytheon argues that the MSB was not a "good" as defined by Kan. Stat. Ann. § 84–2–105 and that plaintiffs are seeking damages caused not to the MSB, but to the airplane. Plaintiffs do not dispute that the MSB is not a "good" as defined in § 84–2–105. However, plaintiffs point out that Count III also contains allegations that defendant Raytheon impliedly warranted that the installation instructions would be clear, accurate, and sufficient to instruct Soriano Aviation in the proper, safe, and airworthy installation of the clevis. Plaintiffs assert that these allegations are brought in both contract and tort and that, therefore, Count III should not be dismissed in total.

■■■ The court agrees that the MSB is not a "good" as defined under Kansas law. Kan. Stat. Ann. § 84–2–105 ("Goods" means "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale [and] must be both existing and identified before any interest in them can pass."). Thus, to the extent that plaintiffs assert a claim that defendant Raytheon warranted that the instructions would be merchantable and fit for their particular purpose, that claim is dismissed.

■■■ The court is skeptical as to whether plaintiffs also allege a tort claim in Count III. The court is mindful that, under Kansas law, "a person suffering damage from breach of an implied warranty may proceed upon either a contract or tort theory, or both, in initially framing his cause of action." *Ware v. Christenberry*, 7 Kan.App.2d 1, 5, 637 P.2d 452, 456 (1981). In this case, plaintiffs allege that defendant Raytheon impliedly warranted that the installation instructions "would be fit for their particular purposes and merchantable, *in that* they would be clear and accurate and sufficient ..." By using the phrase "in that," the allegation that follows that phrase (that the instructions would be clear, accurate, and sufficient) appears to the court to be an element of the immediately preceding allegation (that the instructions would be merchantable and fit for their particular purpose), which the court has now dismissed. However, when considering a motion to dismiss, the court must view all possible reasonable inferences in favor of the plaintiff. In so doing, the court concludes that plaintiffs may state a claim in tort under Count III. As such, the court denies defendant Raytheon's motion to dismiss Count III in its entirety. Count III remains in this lawsuit to the extent that plaintiffs assert a claim in tort that defendant Raytheon impliedly warranted the instructions to be clear, accurate, and sufficient to instruct its Authorized Service Centers in the proper, safe, and airworthy installation of the clevis.

● Motions To Amend Complaint

At the time plaintiffs initially filed this action, defendant Raytheon was the only named defendant. On July 11, 2002, defendant Raytheon filed a third-party complaint, adding as a third-party defendant CE Machine. On August 8, 2002, third-party defendant CE Machine filed a fourth-party complaint, adding as a fourth-party defendant Metal Improvement. On September 30, 2002, plaintiffs filed a motion seeking leave to file a claim against fourth-party defendant Metal Improvement. Thereafter, on October 21, 2002, plaintiffs filed a supplemental motion to include additional claims against third-par-

ty defendant CE Machine and fourth-party defendant Metal Improvement. The court now turns to plaintiffs' motions to assert claims against fourth-party defendant Metal Improvement (Docs. 42 & 45).

Plaintiffs' first motion, filed September 30, 2002, seeks leave to assert a negligence claim against fourth-party defendant Metal Improvement. Plaintiffs' supplemental motion, filed October 21, 2002, seeks leave to assert claims against third- and fourth-party defendants CE Machine and Metal Improvement for breach of implied warranties (Count I), strict liability (Count II), negligence (Count III), and failure to perform services in a workmanlike manner (Count IV). Fourth-party defendant Metal Improvement opposes plaintiffs' motions to amend, arguing that the economic loss doctrine bars plaintiffs' negligence claims and that the statute of limitations, Kan. Stat. Ann. § 60–513, bars plaintiffs' remaining claims.

■■■ A court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim. *Lyle v. Commodity Credit Corp.,* 898 F.Supp. 808, 810 (D.Kan.1995) (citing *Ketchum v. Cruz,* 961 F.2d 916, 920 (10th Cir.1992)). Accordingly, this court must analyze plaintiffs' proposed amendments as if they were before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Based upon the court's foregoing analysis regarding application of the economic loss doctrine, the court rejects fourth-party defendant Metal Improvement's first argument. The court already determined that, at this stage in the litigation, dismissal based on the economic loss doctrine is premature. Before the court can determine whether the economic loss doctrine applies, the parties must present evidence of their contractual obligations.

Fourth-party defendant Metal Improvement next argues that plaintiffs' claims are barred by the statute of limitations. Under Kansas law, actions for property damage must be brought within two years. Kan. Stat. Ann. § 60–513. The date of the airplane incident was October 19, 2000. Thus, any claims brought by plaintiffs against fourth-party defendant Metal Improvement must have been filed no later than October 19, 2002.

Fourth-party defendant Metal Improvement contends that plaintiffs' motion to amend was filed October 21, 2002 and that, as a result, the claims asserted therein are time-barred. However, the court points out that, while plaintiffs filed their supplemental motion to amend on October 21, 2002, plaintiffs filed their first motion to amend on September 30, 2002. In that first motion to amend, plaintiffs asserted a negligence claim against fourth-party defendant Metal Improvement. With respect to fourth-party defendant Metal Improvement, plaintiffs' supplemental motion to amend merely attempts to assert additional claims. Thus, the court must determine whether the initial motion to amend was timely filed and, if so, whether the claims set forth in plaintiffs' supplemental motion relate back.

• Plaintiffs' Motion to File Claim Against Fourth–Party Defendant Metal Improvement Company, Inc. (Doc. 42)

■■■ Fourth-party defendant Metal Improvement cites Local Rule 15.1(a) for the proposition that plaintiffs' amended complaint should be filed as of the date of the filing of the order granting the motion to amend. Local Rule 15 states in relevant part:

If the court grants the motion to amend, the clerk shall detach and file the original amended pleading, and it will be deemed

filed as of the date of the filing of the order granting the motion, *unless the order otherwise provides.*

██ D. Kan. Rule 15.1(a) (emphasis added). In the case at hand, if the court granted plaintiffs' first motion to amend, and then deemed the amended complaint filed as of the date of this order, plaintiffs' amended complaint would be time-barred. In these circumstances, the court believes it would be inequitable to deem the amended complaint filed as of the date of this order. Whether plaintiffs' claims are considered time-barred should not depend solely on the timing in which the court disposes of its motions. As long as plaintiffs filed their motion before the statute of limitations expired, plaintiffs should be allowed to proceed with their claims. *See Farm Credit Bank of Wichita v. FCB Ltd. P'ship,* 825 F.Supp. 932, 935 (D.Kan.1993) ("For purposes of the statute of limitations, an amended complaint that adds new parties to a diversity action may be deemed filed on the date the motion to amend is filed, rather than on the date that the plaintiff actually files the complaint after receiving leave of the court to file.") (citing *Wallace v. Sherwin Williams Co.,* 720 F.Supp. 158 (D.Kan.1988)). Under these facts, the court deems plaintiffs' amended complaint to have been effectively filed on the date that plaintiffs filed their motion for leave to add fourth-party defendant Metal Improvement: September 30, 2002. Plaintiffs' amended complaint was therefore effectively filed within two years of the date the airplane incident occurred.

Accordingly, the court finds that neither the economic loss doctrine nor the statute of limitations bars plaintiffs' claims. As such, the court hereby grants plaintiffs' September 30, 2002 Motion to File Claim Against Fourth–Party Defendant Metal Improvement Company, Inc. (Doc. 42).

● Plaintiffs' Supplemental Motion to Amend Complaint (Doc. 45)

██ The court now turns to plaintiffs' supplemental motion to assert additional claims against fourth-party defendant Metal Improvement. Plaintiffs' supplemental motion was filed on October 21, 2002, more than two years after the airplane incident occurred. The court therefore considers Federal Rule of Civil Procedure 15(c) to determine whether plaintiffs' new claims are timely. Given the court's ruling that plaintiffs' amended complaint adding fourth-party defendant Metal Improvement was timely filed, the court concludes that plaintiffs had already asserted a claim against fourth-party defendant Metal Improvement at the time the supplemental motion to amend was filed. Thus, this is not a situation in which a new party was brought into the lawsuit after the statute of limitations had run. Had that been the case, Rule 15(c)(3) would govern. Fed. R.Civ.P. 15(c)(3) (governing amendments changing a party or the naming of a party).

In this case, the court applies Rule 15(c)(2), which provides that an amended pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2). For purposes of this analysis, the court considers the September 30, 2002 amended complaint as the original pleading since that was the point at which fourth-party defendant Metal Improvement was brought in *by plaintiff* as a defendant. Moreover, the new claims plaintiffs attempt to assert clearly arise out of the same transaction or occurrence as set forth in the September 30, 2002 amended complaint. As such, the court finds that the claims asserted in the Octo-

**1148**

ber 21, 2002 motion to amend relate back to the September 30, 2002 amended complaint and, as such, are not barred by the statute of limitations. Accordingly, the court grants plaintiffs' Supplemental Motion to Amend Complaint (Doc. 45).

IT IS THEREFORE ORDERED that defendant Raytheon's Motion to Dismiss (Doc. 6) is granted only to the extent that plaintiffs assert a claim that defendant Raytheon warranted that the instructions would be merchantable and fit for their particular purpose. Defendant Raytheon's Motion to Dismiss is denied in all other respects. Plaintiffs' Motion to File Claim Against Fourth–Party Defendant Metal Improvement Company, Inc. (Doc. 42) and plaintiffs' Supplemental Motion to Amend Complaint (Doc. 45) are granted.