Affirmed in Part and Reversed and Remanded in Part and Opinion filed
November 13, 2003



















Affirmed in Part and Reversed and Remanded in Part and Opinion filed November
 13, 2003.                                                            

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00874-CV 


____________

 

EQUISTAR CHEMICALS, L.P., Appellant

 

V.

 

DRESSER-RAND COMPANY, HALLIBURTON COMPANY, AND INGERSOLL-RAND COMPANY, Appellees

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the 11th District
Court

                                                           Harris County, Texas                       

Trial Court Cause No.  00-37203




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



O P I N I O
N

            Equistar
Chemicals, L.P. sued Dresser-Rand Company[1]
for damages resulting from the failure of two impellers, integral components in
two large compressors Dresser sold to Equistar’s
predecessor in 1975.[2]  The trial court denied Dresser’s motions for
summary judgment and judgment notwithstanding the verdict based on limitations.
 At trial, a jury found Dresser liable (under
strict liability, negligence, and breach of warranty theories), assessed damages
at more than $3.6 million, and apportioned 80% of fault to Dresser.  Finding all but a minor part of Equistar’s claims barred by limitations, we reverse.

Background

            Equistar’s
Channelview olefins plant uses two charge gas compressors in the production of
ethylene and propylene, chemicals used in the production of antifreeze and
plastics.  As part of that process, each
of the Dresser units compresses a gas stream using an impeller—a rotor around
which seventeen large blades spin.  Both
the compressors and impellers were intended to run constantly at high rates of
speed for many years.

            After many years of successful
operation, Equistar’s predecessor decided to boost
production in 1989 by installing larger impellers, which were also bought from
Dresser.   In July 1991, again in December 1993, and a
third time in March 1995, part of an impeller broke off, damaging and shutting
down a compressor.  Consultants suggested
at least three possible causes: corrosion (from chemicals in the gas stream),
welding defects, and resonance.[3]

            To address this recurring problem,
the impellers were reduced to their original size in 1996, and specially treated
to reduce corrosion and strengthen their welds.[4]  However, the reduction in size required an
increase in operating speed in order to maintain production levels.  On April
 1, 1999, one of the impellers failed again.  The unit was returned to service May 1 with a
newly installed impeller, but two weeks later that one failed as well.  

            Equistar filed
suit in 2000, seeking more than $40 million for extensive damage to one of the compressors
and consequential damages from the interruption of production.  This suit involves only the 1999
failures—apparently Equistar’s predecessor filed no
claims regarding the earlier ones.

Limitations and the Economic Loss Rule

            Dresser contends all Equistar’s claims are barred as a matter of law by statutes
of limitation and repose.  The latter,[5]
though pleaded, was apparently never raised by any motion in the trial court;
we agree with Equistar that raising it for the first
time on appeal was too late.[6]  But the former—limitations—was asserted by
unsuccessful motions both before and after trial.  

            The accrual of a cause of action,
and hence the running of the statute, is a matter of law for the court.[7]  The statute of limitations for Equistar’s tort claims (product-liability actions asserting
both negligence and strict liability) is two years from the date of injury.[8]  By contrast, the statute of limitations for Equistar’s contract claim (breach of an implied warranty of
fitness) is four years from the date of sale, regardless of when the buyer
learned of the breach.[9]  Thus, we must first decide whether this is a
tort or contract claim before we can decide whether either has run.[10]

            Equistar obtained
favorable verdicts on both tort and warranty theories, but Texas law does not
allow it the option of pursuing both in these circumstances.  By adopting the economic loss rule in 1977, the
Supreme Court of Texas drew a bright line between warranty and product-liability
claims.[11]  In transactions between commercial buyers and
sellers, if damage occurs only to the product that passed between them, the
claim is one for economic loss and must be brought on the parties’ contract; conversely,
if there is physical injury to persons or “other property” (that is, property
other than the product itself), those claims may be brought in tort.[12]

            For example, in Murray v. Ford Motor Company,[13]
an electrical failure in the Murrays’ truck destroyed
both the truck (worth $9,500) and personal property stored in it (worth $453).[14]  The Fifth Court of Appeals held all damages
to the truck (the “product” Ford sold to the Murrays)
had to be brought as warranty claims, which the Murrays
had abandoned as the fire occurred more than four years after purchase.[15]  The Court remanded the Murrays’
claims for damage to their personal property (the “other property”) as they
were properly brought as tort claims within two years after the fire.[16]

            Federal maritime law also follows
the economic loss rule, and to the same effect. 
In Saratoga Fishing Co. v. J.M. Martinac & Co.,[17]
defective hydraulics allegedly caused a fire that sank a fishing vessel, taking
down with it assorted nets, skiffs, and spare parts, but with no loss of life.[18]  The United States Supreme Court held the
economic loss rule barred recovery in tort for any damages related to the
fishing vessel itself, but did not bar a tort claim regarding the assorted equipment
added after the boat was bought.[19]

            As discussed in more detail below,
almost all of the damages claimed by Equistar in this
case stem from damage to the compressors themselves.  Assuming the compressors themselves are the
product, any claim for damage to them had to be brought in a contract or
warranty action by 1979 (four years after the original sale). 

Component Parts

            But Equistar
argues we should consider only the impellers as the “product,” and consider the
compressors themselves as “other property” for which damages are recoverable in
tort.  Based again on precedent from the
highest authority, we disagree.

            In East River Steamship Corporation v. Transamerica Delaval,
Inc.,[20] the
United States Supreme Court held that when a defective turbine component
damaged the rest of the turbine, it had not damaged “other property”: 

 

Since each turbine
was supplied by Delaval as an integrated package,
each is properly regarded as a single unit. Since all but the very simplest of
machines have component parts, a contrary holding would require a finding of
“property damage” in virtually every case where a product damages itself.  Such a holding would eliminate the distinction
between warranty and strict products liability. . . .  Obviously, damage to a product itself has
certain attributes of a products-liability claim. But the injury suffered—the
failure of the product to function properly—is the essence of a warranty
action, through which a contracting party can seek to recoup the benefit of its
bargain. . . .  Damage to a product
itself is most naturally understood as a warranty claim.[21]

 

            Similarly, the Supreme Court of
Texas has held that damage to an entire airplane caused by the failure of one
component could not be brought in tort because of the economic loss rule.[22]  Accordingly, damage to the compressors caused
by impellers (at least, the original ones) was not damage to “other property,” and
thus again had to be brought as a contract or warranty action by 1979.

Replacement Parts

            But Equistar
points out the impellers that failed in 1999 were not the original components
but replacements.  In the decades after
the initial sale, impellers were occasionally modified or replaced; the two
that failed in 1999 were sold by Dresser as replacements in 1988 and 1991.[23]  Because they were not a part of the original
sale, Equistar argues the replacement impellers must
be considered a separate product from the compressors.  Texas courts do not appear to have addressed
the economic loss rule in the context of replacement parts, but other courts
generally have not made any such distinction.

            For example, in East River, some of the
turbine components that damaged the maritime turbines were replacement parts,
sold by the same manufacturer and containing the same defect.[24]  In holding that damages to the turbines could
not be brought in tort, the United States Supreme Court made no distinction
between damage caused by the original and the replacement components.[25]

            The issue was addressed in more
detail recently by the Third Circuit. 
That court held a defective connecting rod that damaged an entire engine
had not damaged “other property” (thus barring any tort claim), even though it
was installed as a replacement part 10 years after the original sale:

Sea-Land has not convinced us,
however, that there is any rational reason to deviate from the integrated
product rule simply because the defective component happens to be a replacement
part instead of the part originally supplied with the product. . . .  Since all commercial parties are aware that
replacement parts will be necessary, the integrated product should encompass
those replacement parts when they are installed in the engine.   [citation omitted.]  Sea-Land would, however, have us believe that
the difference in timing is dispositive . . . [and
that] the later addition of replacement parts is a new product.  We disagree.   It is a common commercial practice for the
parties to a transaction to contemplate the integration of replacement parts subsequent
to a purchase.   In the instant case, it
was expected that all the replacement parts would eventually have to be
integrated into the engine.   The GE
connecting rod was purchased to be installed and to become integrated with the
GE engine.  It is a component of that
engine; it has no use to Sea-Land otherwise.[26]

Although
it is not unanimous, most courts have followed the same reasoning and held
replacement parts provided by the original seller do not make the original
product “other property.”[27]    

            For four reasons, we think this
application of the economic loss rule should be the same in Texas as in most
other jurisdictions.  First, the Supreme
Court of Texas adopted the economic loss rule for the same reasons and after
considering the same alternatives as the United State Supreme Court.[28]  Applying the same rule differently would
create more confusion in an area that already suffers from that difficulty.

            Second, replacing one defective part
with another is not a new injury.  In
this case, there is no evidence the replacement impellers were defective in a
way that was different from the originals.[29]  If Equistar’s
predecessor was deprived of the benefit of its bargain by getting defective
impellers, that harm accrued upon the original purchase.

            Third, applying a different rule
would defeat the purpose for which Texas adopted the economic loss rule in the
first place.  The rule is based on the
proposition that commercial parties may negotiate for whatever warranty or
liability limits they choose, and adjust their price accordingly.[30]  If replacement parts escape the reach of the
economic loss rule, then tort law would create new and expanded liabilities
long after any negotiated warranty had expired. 
Such a rule could make replacement parts very expensive (assuming
sellers would supply them at all), as the price would have to reflect a new
four-year extended warranty on the original product.  

            Finally, Texas law already provides
that a seller’s efforts to repair or replace defective parts does not extend
the limitations period for breach of warranty claims.[31]  If the economic loss rule does not apply to those
same post-sale efforts, then parties can achieve the opposite result by simply
pleading their claims in tort.  

            For all of these reasons, we follow the
majority of jurisdictions in applying the economic loss rule to replacement
components.  Thus, all of Equistar’s claims for damage to the compressors themselves
had to be brought within four years of the original sale; because they were
not, they are barred by limitations.[32]

Nearby Parts

            Almost all of the $3.6 million in
damages Equistar proved at trial were for parts,
technical assistance, and labor needed to repair the compressors
themselves.  For the reasons stated
above, such claims were barred.  All of
the alleged $37 million in additional damages excluded by the trial court were
for the same purpose,[33]
so they too are barred and Equistar’s cross-appeal is
rendered moot.

            But there was some testimony that
equipment located near the compressors suffered minor damage in the 1999
failures.  Such damages would be damage
to “other property,” and thus could be brought as a tort claim under the
economic loss rule.

            Equistar
argues this minor damage to “other property”—no matter how small—allows all its claims to be brought in
tort.  A sentence in a Texas Supreme
Court case issued shortly after the economic loss rule was adopted might
support this theory:  

To the extent that the product
itself has become part of the accident risk or the tort by causing collateral
property damage, it is properly considered as part of the property damages,
rather than as economic loss.[34] 

For
several reasons, we agree with the Murray
court’s rejection of this construction.[35]  First, the quoted case does not actually
apply the theory; though suggesting damage to “other property” allowed the
entire claim to be brought in tort, the only claim actually remanded was in
warranty.[36]  Second, a case issued the same day reaches
the opposite conclusion.[37]  Third, this construction would again defeat
the purpose behind the economic loss rule—having adopted the Uniform Commercial
Code’s approach that commercial parties must bargain for any warranty they
want, it would abandon that approach if there was a scratch to neighboring
equipment, or if a single paper clip went down with the ship.  We agree with the United States Supreme Court
and the Dallas Court of Appeals that damage to the product itself remains a
warranty claim in all cases, and only
damage to persons or other property may be brought in tort.[38]

            There was no evidence at trial
segregating the amount of damages to property other than the compressors
themselves.  Because there was evidence
to support damage to other property, but nothing like the entire amount awarded,
we must reverse and remand for a new trial on those claims.[39]

            Dresser argues we need not remand
these product-liability claims as there was no evidence to support liability
under any of them.  But there was
evidence resonance could occur within the normal operating speeds Dresser
approved, resulting in metal fatigue and eventual failure.  Dresser argues Equistar’s
predecessors should have known of this risk from the earlier failures, but the
evidence showed even the experts disagreed on what caused them.  No discovery rule question was submitted to
the jury, and we cannot say as a matter of law that Equistar
should have known the recommended operating speeds were wrong.  Accordingly, we must remand Equistar’s tort claims to the extent they seek damage to
property other than the compressors themselves.

Conclusion

            Both parties to this 1975 sale were
huge companies, well able to protect themselves in any contract they made.  Both knew these very expensive machines were
intended to operate under extreme conditions for many years, and a catastrophe
might result if they did not.  If Equistar and its predecessors wanted Dresser to pay for
damage to the compressors occurring 24 years after installation, they should
have negotiated a warranty to that effect. 
Such a warranty would no doubt have been expensive.  But having chosen not to incur that expense,
the owners of this equipment cannot claim the benefit of a bargain they chose
not to make.    

            We reverse the trial court’s
judgment, render a take-nothing judgment on Equistar’s
claims stemming from damage to the compressors themselves, and remand 

 

Equistar’s tort claims stemming from damage to property
other than those compressors.  

 

                                                                        

                                                                                    

                                                                        /s/        Scott Brister

                                                                                    Chief
Justice

 

Judgment
rendered and Opinion filed November
 13, 2003.

Panel
consists of Chief Justice Brister and Justices Anderson and Seymore.

 











[1] Equistar also sued Halliburton Company and Ingersoll­–Rand Company, but they were dismissed by the
trial court on motion for directed verdict. 
Equistar does not appeal either dismissal.

 





[2]
The compressors were originally manufactured by Dresser Clark (Dresser-Rand’s
predecessor) and sold to Arco Refineries (Equistar’s
predecessor).  Arco later sold the plant
to Lyondell Petrochemical Company, who sold it to Equistar.  Upon purchase, Equistar
acquired all contractual rights and obligations relating to the plant’s
operations.  As no issue turns on these
changes, we make no distinction among the parties and their privies herein.

 





[3]
Resonance, in this context, refers to the tendency of rotating equipment to
vibrate at a particular frequency.  It is
a well-known potential hazard for such equipment.

 





[4] Sermatech coating was applied to resist corrosion, and
“shot-peening,” a welding enhancement technique, was
used to create stronger welds.

 





[5] See Tex.
Civ. Prac. & Rem. Code § 16.012 (providing 15-year statute of
repose for equipment manufacturers).

 





[6] See
Tex. R. App. P. 33.1(a)
(requiring timely and sufficiently specific request, objection, or motion to
preserve complaint for appellate review).

 





[7] See Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 567 (Tex.
2001).

 





[8] See Tex.
Civ. Prac. & Rem. Code § 16.003(a); Seibert v. Gen. Motors Corp., 853 S.W.2d 773, 776-77 (Tex.
App.—Houston [14th Dist.] 1993, no pet.). 
Equistar does not assert that either of the
1999 failures was undiscoverable.

 





[9] See Tex.
Bus. & Com. Code § 2.725(b); Am.
Tobacco Co. v. Grinnell, 951
S.W.2d 420, 435 (Tex. 1997).

 





[10]
Though Dresser’s pre- and post-trial motions did
not explicitly mention the economic loss rule, they necessarily encompassed it—if
no tort claims could be asserted, then the cause of action accrued on the date
of sale and Equistar’s suit was untimely.   Additionally, Dresser’s no-evidence point in
its directed verdict and post-trial motions challenging the tort awards
preserved its contention that it had no duty in tort arising under the facts of
this case.  See Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.,
987 S.W.2d 50, 52 (Tex. 1998) (holding point asserting no evidence supported
DTPA award preserved contention that no implied warranty arose under facts of
case); Edward D. Jones & Co. v.
Fletcher, 975 S.W.2d 539, 543 (Tex. 1998) (holding post-trial point
asserting no evidence supported judgment preserved contention that defendant
had no duty to ascertain client’s mental capacity).

 





[11] See Nobility Homes of Tex., Inc. v. Shivers, 557 S.W.2d 77, 80 (Tex.
1977).

 





[12] See id.; Mid Continent Aircraft Corp. v.
Curry County Spraying Serv., Inc., 572 S.W.2d
308, 312–13 (Tex. 1978) (holding economic loss rule barred strict liability claim);
Indelco, Inc. v. Hanson Indus. N. Am.—Grove
Worldwide, 967 S.W.2d 931, 933 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied) (holding economic loss rule barred negligence claim).

 





[13] 97 S.W.3d
888 (Tex. App.—Dallas 2003, no
pet. h.).

 





[14] Id. at 890.

 





[15] Id. at 891–92.

 





[16] Id. at 893. 

 





[17]
520 U.S. 875,
117 S. Ct. 1783 (1997).

 





[18] Id. at 877­­–78,
117 S. Ct. at 1785.

 





[19] Id. at 884–85,
117 S. Ct. at 1789.

 





[20] 476
U.S. 858, 106 S.
 Ct. 2295 (1986).

 





[21] Id. at 867–68, 872, 106 S. Ct. at 2300,
2302 (quoting in part N. Power & Eng’g Corp. v. Caterpillar Tractor Co., 623 P.2d 324,
330 (Alaska 1981)).

 





[22] See Mid Continent, 572 S.W.2d at 310–11,
313.  Similarly, in Signal Oil & Gas Co. v. Universal Oil Products, the Supreme
Court of Texas held that damage to a reactor because of defective bolts would
not have been damage to “other property” but for additional damage that was
also done “to other surrounding property.”
 572 S.W.2d 320, 325 (Tex.
1978) (emphasis in original).

 





[23]
The impeller that failed in April 1999 was sold to Equistar’s
predecessor in 1991; the impeller that failed in May 1999 was sold in 1988 or
before.

 





[24] See 476 U.S. at 860, 106 S. Ct. at
2296–97.

 





[25] See id. at 874–768, 106 S.
 Ct. at 2304.

 





[26] Sea-Land Serv.,
Inc. v. Gen. Elec. Co., 134 F.3d 149, 154 (3rd Cir. 1998) (emphasis in
original).

 





[27] See Petroleum Helicopters, Inc. v. Avco Corp., 930 F.2d 389 (5th Cir. 1991) (holding
damage to helicopter caused by defective flotation device fell within economic
loss rule, even though device had been removed, overhauled, and reinstalled
several times, and sank with different helicopter than one with which it had
originally been sold); Northland Power v.
Gen. Elec., Co., 105 F. Supp. 2d 775, 789-92 (S.D. Ohio 1999) (applying
economic loss rule under California law, and holding damage to entire generator
caused by refurbished and recoated engine blades fell within economic loss
rule); Exxon Shipping Co. v. Pac. Res.,
Inc., 835 F. Supp. 1195, 1201 (D. Haw.1993) (holding damage to mooring
system caused by defective chain fell within economic loss rule even though it
was sold as a spare and installed later as replacement).  But cf.
Philippine Am. Life Ins. v. Raytheon Aircraft Co., 252 F. Supp. 2d 1138,
1144 (D. Kan. 2003) (refusing to hold as a matter of law that Kansas economic
loss rule barred claims based on free replacement part that damaged airplane).
Of course, a different situation may be presented when a replacement part is
purchased from someone other than the original seller.  See
Transco Syndicate #1, Ltd. v. Bollinger
Shipyards, Inc., 1 F. Supp. 2d 608, 612 (
E.D. La.
1998) (refusing to apply economic loss rule to refurbisher
of engine who was not also seller of boat).

 





[28] Compare E. River, 476 U.S.
at 868-74, 106 S. Ct. at 2300–04, with Mid Continent, 572 S.W.2d at 310-13.

 





[29] There
was no evidence either impeller was more susceptible to corrosion or weld
weaknesses than the originals; after coating and shot-peening
in 1996, it was undisputed they were certainly less so.  Neither was there evidence the replacement
impellers were more susceptible to resonance than the originals—although
Dresser recommended increasing the operating speeds in 1995 to maintain
production levels, it never changed the maximum continuous operating speed it
had originally certified.  Thus, any injury
from Dresser’s approval of operating ranges within which resonance could occur
accrued (like all Equistar’s other claims) upon
original delivery in 1975.

 





[30] See E. River, 476 U.S.
at 873, 106 S. Ct. at 2303 (noting that law of warranty is well-suited to
commercial controversies, as parties can set their own terms and adjust price accordingly).

 





[31] See Pako Corp. v.
Thomas, 855 S.W.2d 215, 219 (Tex. App.—Tyler 1993, no writ) (holding gear
replacements and repair efforts did not extend warranty accrual date past
original date of sale); see also Walker
v. Sears, Roebuck & Co., 853 F.2d 355, 364–65 (5th Cir. 1988)
(surveying Texas law on this point).

 





[32]
Even if we are incorrect and a new warranty
begins with the sale of every replacement part, we would still have to reverse
the trial court’s judgment.  The only
warranty Equistar submitted to the jury concerned the
fitness of the products, a warranty applicable to sales rather than repairs.  See
Tex. Bus. & Com. Code §
2.314.  It is unclear whether such a
warranty would exist under these facts.  See Rocky
Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist., 987 S.W.2d 50, 53
(Tex. 1998) (barring any implied warranty for repair services if claimant could
have brought negligence or contract actions). 
But assuming it does, it would run from the sale of the replacement
impellers by Dresser, the latest of which was nine years before suit was filed.  As a substantial part of the judgment here
related to damage to the impellers themselves, that portion would still be
subject to the economic loss rule and thus barred by limitations.

 





[33]
The trial court excluded damages for lost profits, costs to replace product and
feedstock, and costs to expedite repairs, based on the parties’ 1998 general
agreement to terms and conditions for all their dealings.  These damages are all consequential damages
from the loss of the compressor unit itself. 
See E. River, 476 U.S. 858,
873–74, 106 S. Ct. at 2303–04 (holding repair costs and lost profits due to
damage to product itself must be recovered under warranty law); Mid Continent, 572 S.W.2d at 312-13
(holding loss of use and cost of repair due to damage to product itself must be
recovered under warranty law).  Thus,
they are also barred by limitations pursuant to the economic loss rule.

 





[34] See Signal
Oil, 572 S.W.2d at 325.

 





[35] See Murray, 97
S.W.3d at 892.

 





[36]
The strict-liability claim was barred because the jury failed to find it was a
producing cause of the damages.  See Signal
Oil, 572 S.W.2d at 324-26.

 





[37] See Mid Continent, 572 S.W.2d at 317
(Pope, J., dissenting) (noting in dissenting opinion joined by author of Signal Oil that Court’s ruling limited plaintiff
to contract action for damage to airplane itslef,
while allowing tort actions for damage to pilot, bystanders, and surrounding
property).

 





[38] See Saratoga Fishing, 520 U.S.
at 879–85, 117 S. Ct. at 1786–89; Murray, 97 S.W.3d at 893.

 





[39] See Formosa Plastics Corp. USA v. Presidio Eng’rs and Contractors, Inc., 960 S.W.2d 41, 51 (Tex.
1998) (holding new trial required when there is evidence to support some
damages but not the entire amount awarded); Texarkana
Mem’l Hosp., Inc. v. Murdock, 946 S.W.2d 836, 841
(Tex. 1997) (same).