(960 P.2d 255)
No. 78,054

KOSS CONSTRUCTION, *Appellant,* v. CATERPILLAR, INC., *Appellee,*
and MARTIN TRACTOR COMPANY, INC., *Defendant.*

Opinion filed
June 5, 1998.

*Sharon A. Werner,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A.,
Wichita, for appellant.

*George P. Coughlin* and *John M. McFarland,* of Lathrop & Gage, L.C.,
Overland Park, for appellee.

Before ROYSE, P.J., ROGG, S.J. and JAMES J. SMITH, District Judge,
assigned.

ROYSE, J.:   This is a products liability action. Koss Construction
Co. (Koss) sued Caterpillar, Inc. (Caterpillar) and Martin Tractor
Company, Inc. (Martin) for damages to a Caterpillar roller caused
by an allegedly defective part. Caterpillar filed a motion for judg-
ment on the pleadings, which the district court granted. Koss ap-
peals from that decision.

A motion for judgment on the pleadings is based upon the
ground that the moving party is entitled to a judgment on the face
of the pleadings themselves. In considering a defendant's motion

for judgment on the pleadings, the question is whether, upon the admitted facts, the plaintiff has stated a cause of action. *Scully v. Overall*, 17 Kan. App. 2d 582, 584, 840 P.2d 1211, *rev. denied* 252 Kan. 1093 (1992).

"A motion for judgment on the pleadings serves as a means of disposing of a case without trial where the total result of the pleadings frame the issues in such manner that the disposition of the case is a matter of law on the facts alleged or admitted leaving no real issue to be tried." *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*, 214 Kan. 139, Syl. ¶ 2, 519 P.2d 682 (1974).

Koss' petition alleged that Koss purchased a vibratory roller from Martin in November 1992. The roller was manufactured by Caterpillar. In November 1993, the roller caught fire during a highway project and was significantly damaged. Koss alleged that the fire was caused by defective hydraulic hoses. Koss sought judgment from Martin and Caterpillar for the damage to the roller, alleging claims based on strict liability, negligence, and implied warranty of merchantability.

Caterpillar filed a motion for judgment on the pleadings. The district court determined that Koss could not recover for simple economic loss to the roller under either negligence or strict liability. The district court further concluded that because Koss lacked privity with Caterpillar, it could not maintain an action for breach of implied warranty against Caterpillar. After the district court granted Caterpillar's motion for judgment on the pleadings, the parties stipulated to the dismissal without prejudice of Koss' claims against Martin. Koss appeals.

The first issue presented on appeal is whether the district court erred by concluding that a party may not recover damages for harm to a defective product under negligence or strict liability in tort. This is a question of law, subject to unlimited review on appeal. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 283, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). This is an issue of first impression in Kansas.

Koss contends that in Kansas, damages to a defective product are recoverable under negligence or strict liability. To support this contention, Koss relies on *Fordyce Concrete, Inc. v. Mack Trucks, Inc.*, 535 F. Supp. 118 (D. Kan. 1982). In that case, the defendant,

Mack Trucks, Inc. (Mack), delivered a chassis to Ash Grove Cement, which was the parent corporation of Fordyce Concrete, Inc. (Fordyce). Mack knew the chassis was to be used as a concrete truck, but Fordyce arranged for the purchase and installation of the truck mixer assembly. The frame on the chassis broke, causing the cab and the mixer to separate and collide with each other. 535 F. Supp. at 119.

Fordyce brought suit against Mack, alleging breach of implied warranties and strict liability for sale of a product in a dangerous and defective condition. Fordyce later asserted a claim against Reynolds Metal Company (Reynolds), which had designed and manufactured the frame, claiming Reynolds was strictly liable for damage caused by its dangerous and defective condition. The defendants filed motions for summary judgment. 535 F. Supp. at 119.

In ruling on the motions for summary judgment, the federal district court analyzed the question whether Fordyce could recover damages for harm to the defective product under a theory of strict liability. The court began by identifying four types of injury that may be present in a products liability case: (1) personal injuries, (2) physical damage to property other than the defective product, (3) harm to the defective product itself, and (4) economic loss. 535 F. Supp. at 120. The court then examined § 402A of the Restatement (Second) of Torts (1965), which provides in part that a seller of

"(1) . . . any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

The court concluded that under the plain language of § 402A a plaintiff may recover under strict liability for damage to property other than the defective product. 535 F. Supp. at 120-121. The court next acknowledged that most courts do not allow a plaintiff to recover under negligence or strict liability for loss that is purely economic or pecuniary in nature. 535 F. Supp. at 121-122.

Faced with these two choices, the court concluded that damage to the defective product is not included within the definition of economic loss. Instead, damage to the defective product should be treated like damage to other property, recoverable under tort theories. In reaching this conclusion, the court acknowledged that the most difficult issue presented by the question before it was whether the remedies available under the Uniform Commercial Code would be abrogated by allowing recovery for damage to a defective product under § 402A. The court decided, however, that the burden of proving that a product was unreasonably dangerous under § 402A distinguishes "defective products with qualitative defects covered by the Uniform Commercial Code from those products in a defective condition covered by § 402A." 535 F. Supp. at 124-125.

The federal district court, in denying the defendants'. motions for summary judgment on Fordyce's strict liability claims, concluded its analysis with the following:

"We doubt that the Kansas appellate courts would engage in drawing lines between different types of property damage as attempted by many courts in the cases discussed above. We believe that the Kansas Supreme Court, if faced with the question before us, would once again follow the explicit language of § 402A and allow plaintiff to recover for physical damage to property resulting from an unreasonably dangerous defective product regardless of whether the damage is inflicted upon the defective product or upon other property." 535 F. Supp. at 126.

One authority expressed pointed criticism of the approach approved in *Fordyce*:

"A few maverick decisions have even allowed recovery in strict tort when the defect causes passive injury to the goods sold, and no associated property loss. Such decisions extend Section 402A beyond anything the drafters dreamed of, and effectively repeal the warranty provisions of the Code insofar as Article 2 defenses might be available to the seller. Fortunately, this type of judicial legislation is rare. Most courts respect Article 2 occupation of the field where the loss is purely economic in nature, including direct loss to the goods themselves due to breach of warranty. Since Section 2-714 directly covers primary economic loss to the defective goods, the courts should not effectively repeal that Section by stretching Section 402A beyond its intended limits. In sum, with respect to primary economic loss, warranty is superior to strict tort unless the courts overstep

their bounds." Clark and Smith, The Law of Product Warranties ¶ 12.03[9][c] (1984).

After *Fordyce* was decided, the United States Supreme Court addressed the question whether damages to a defective product are recoverable under tort or contract law in *East River S.S. Corp. v. Transamerica Deleval,* 476 U.S. 858, 90 L. Ed. 2d 865, 106 S. Ct. 2295 (1986). East River and the other plaintiffs had chartered oil-transporting supertankers built by a related corporation. The turbines which were the main propulsion units for the supertankers were designed, manufactured, and installed by Transamerica. When the plaintiffs discovered damage to the turbines, they filed suit against Transamerica. They alleged that Transamerica was liable under the doctrine of strict liability for defective design of the turbine components. They claimed the defectively designed turbine components damaged the turbines. Thus, the Supreme Court had to examine whether injury to a product itself is the kind of harm that should be protected by products liability or left entirely to the law of contracts. 476 U.S. at 859-861.

The Supreme Court began its analysis by noting the possible overlap between contract and tort law:

"Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. [Citation omitted.] It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort. [Citation omitted.] We must determine whether a commercial product injuring itself is the kind of harm against which public policy requires manufacturers to protect, independent of any contractual obligation." 476 U.S. at 866.

The Court then examined the three approaches which had developed to answer the question whether an injury to a product itself may be brought in tort. The Court concluded the "majority" approach was preferable, holding that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." 476 U.S. at 871. "Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or in other words, that the customer has received 'insufficient product value.' "

476 U.S. at 872. "While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain." 476 U.S. at 873.

The Court explained its rationale for rejecting the "intermediate" positions, represented by cases similar to *Fordyce*:

"The intermediate positions, which essentially turn on the degree of risk, are too indeterminate to enable manufacturers easily to structure their business behavior. Nor do we find persuasive a distinction that rests on the manner in which the product is injured. We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. [Citations omitted.] But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." 476 U.S. at 870.

See *Saratoga Fishing Co. v. J. M. Martinac & Co.*, 520 U.S. 875, 138 L. Ed. 2d 76, 117 S. Ct. 1783 (1997).

Obviously, the *East River* decision, which recognized product liability principles as a part of general maritime law, does not control the question whether Kansas should adopt a contract or tort approach under these circumstances. The reasoning set forth in *East River*, however, is persuasive. *East River* provides a rule that is straightforward and predictable and that establishes a logical demarcation between cases properly pursued as tort actions and those which are warranty claims. Since the *East River* decision, a growing number of jurisdictions have embraced the Supreme Court's reasoning in *East River* to adopt the majority approach to the "economic loss rule," holding that a buyer of defective goods cannot sue in tort where the only injury consists of damage to the goods themselves. See Clark and Smith, The Law of Product Warranties ¶ 12.03[9][c] (1997 Supp.); 1 White and Summers, Uniform Commercial Code § 10-5 (4th ed. 1995). Finally, the latest version of the Restatement of Torts also follows the *East River* approach, clearly limiting tort recovery to damage to the plaintiff's property *other than* the defective product itself. Restatement (Third) of Torts: Product Liability § 21(c) (1998).

Application of the *East River* approach to tort cases in this state is consistent with *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan. App. 2d 625, 827 P.2d 1195 (1992). Elite Professionals was a trucking company which sued Carrier Corporation, the manufacturer of a refrigeration unit. The unit malfunctioned, and the malfunction resulted in the spoilage of a truckload of meat. The district court granted a summary judgment motion filed by Carrier, and this court reversed. 16 Kan. App. 2d at 628.

One issue on appeal was application of the rule that recovery of economic loss is not available in an action sounding in tort. This court noted that Elite Professionals sought recovery for loss of the meat that spoiled on the truck. Elite Professionals did not seek recovery for damages to the refrigeration unit or for its defective condition. 16 Kan. App. 2d at 625-26. This court then examined the sorts of losses which had been held in other cases to be economic losses. They included damages for inadequate value, costs of repair, replacement costs, and loss of use of the defective product. 16 Kan. App. 2d at 633. Each of these losses relate to the defective product itself—not to damage caused to other property. In *Elite Professionals* this court concluded that the damages sought by the plaintiff did not fit the definition of economic loss because Elite sought recovery for "harm to property other than the refrigeration unit itself." 16 Kan. App. 2d at 633.

Koss points out that, notwithstanding the *East River* decision, *Fordyce* has never been overturned. This observation presumes, incorrectly, that *Fordyce* is a controlling authority. It is not. "Federal court decisions on issues of state law are not binding on and have limited precedential effect in state courts." *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, Syl. ¶ 12, 941 P.2d 1321(1997). Moreover, Koss' reliance on *Fordyce* ignores the fact that later federal cases have acknowledged the *East River* rule, see *Winchester v. Lester's of Minnesota, Inc.*, 983 F.2d 992, 996 (10th Cir. 1993), and predicted that in an appropriate case the Kansas Supreme Court will adopt *East River's* reasoning. *Nature's Share, Inc. v. Kutter Products, Inc.*, 752 F. Supp. 371, 382 (D. Kan. 1990).

Koss emphasizes that in this case the damages occurred as a result of a calamitous event, arguing that the hydraulic hoses were

unreasonably dangerous. As noted above, however, the Supreme Court expressly rejected an attempt to distinguish between cases based on the manner in which the product is injured. 476 U.S. at 872. Regardless of how it occurs, damage which is limited to the defective product itself is essentially economic loss.

Koss also attempts to characterize this situation as an "injury to other property" case. Koss contends that the defective product is the hydraulic hose, and that because it seeks recovery for damages to other parts of the roller, it is claiming damages for "other property." This contention is not persuasive. As the Supreme Court noted in *East River*, all but the most simple machines have component parts. This does not mean that damage to "other property" results, when one defective part causes damage to another part within the same product. To hold otherwise would eliminate the distinction between warranty and strict liability. See 476 U.S. at 867. Even *Fordyce*, the case relied on by Koss, rejected an attempt by the plaintiff to treat the damaged truck cab as other property where there was no indication in the record that the cab was purchased separate from the chassis. 535 F. Supp. at 121. For this reason, Koss' assertion that discovery should have been permitted to show damage to other parts of the roller is without merit.

For all the foregoing reasons, we conclude that a commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damage to the goods themselves. Under Kansas law, the economic loss doctrine applies to a claim for damage to the product itself. Thus, the district court did not err in granting Caterpillar's motion for judgment on the pleadings with regard to Koss' negligence and strict liability claims.

The second issue presented on appeal is whether the district court erred by concluding that because Koss lacked privity with Caterpillar, it could not maintain an action for breach of implied warranty against Caterpillar. Resolution of this issue requires consideration of *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887 (1984). That case addressed the issue "whether Kansas permits a corporate ultimate purchaser, who has incurred only economic loss, as opposed to personal injury or property damage, to recover on theories of breach of implied warranty

of fitness and merchantability, from a manufacturer with whom the ultimate purchaser was not in contractual privity." 234 Kan. at 745.

Professional Lens bought a computer which developed problems shortly after delivery. The problems resulted from an allegedly defective hard disc which had been manufactured by Okidata. Even though Professional Lens did not deal directly with Okidata, it joined Okidata in its suit, asserting claims for lost profits and consequential damages. After carefully examining the concept of economic loss and the development of implied warranty law, the Supreme Court rejected Professional Lens' argument that implied warranty liability should extend to the non-privity manufacturers. 234 Kan. at 755.

Koss argues that *Professional Lens* has no application to its claims based on breach of an implied warranty of merchantability. Koss claims *Professional Lens* dealt only with the implied warranty of fitness. This argument is without merit. *Professional Lens* clearly addressed both implied warranties: "We conclude *implied warranties of fitness and merchantability* are not extended to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the remote seller or manufacturer." (Emphasis added.) 234 Kan. at 755.

In its reply brief, Koss asserts that *Professional Lens* has no application because Koss seeks damages for a product that was unreasonably dangerous. The Supreme Court noted in *Professional Lens*, however, that "[p]ublic policy reasons are the basis on which implied warranties have been extended to non-privity manufacturers whose inherently dangerous products cause physical injuries to buyers." 234 Kan. at 754. This is not a case in which inherently dangerous products caused physical injuries to buyers. As Judge Saffels noted in *Owens-Corning Fiberglass v. Sonic Dev. Corp.* 546 F. Supp. 533, 541 (D. Kan. 1982), quoted at 234 Kan. at 753, the Kansas Legislature "rejected a draft version of § 2-318 [of the Uniform Commercial Code] which would have extended implied warranties to all foreseeable product users, even if no personal injury

was involved." Koss has forwarded no public policy basis for extending implied warranty liability to this case.

Koss further asserts in its reply brief that *Professional Lens* has no application because Koss is not seeking damages solely for economic loss. As discussed earlier, Koss' claim is for economic loss.

For all these reasons, we conclude that, absent privity, a corporate purchaser who has incurred only economic loss may not maintain a cause of action for breach of the implied warranty of merchantability against a manufacturer. The district court did not err in granting Caterpillar's motion for judgment on the pleadings with regard to Koss' implied warranty claim.

Affirmed.