(83 P.3d 1257)

No. 88,395

DAN PRENDIVILLE, *Appellant*, v. CONTEMPORARY HOMES, INC., *et al.*, *Appellees*.

Opinion filed February 13, 2004.

*Paul M. Dent*, of Kansas City, for appellant.

*Heather A. Jones* and *James A. Durbin*, of Swanson Midgley, LLC, of Kansas City, Missouri, for appellees.

Before GREEN, P.J., MARQUARDT and MALONE, JJ.

MALONE, J.: Dan Prendiville appeals the district court's grant of summary judgment on a negligence claim against his residential contractor. The issue is whether the economic loss doctrine, recognized in Kansas in *Koss Construction v. Caterpillar, Inc.*, 25 Kan. App. 2d 200, 209, 960 P.2d 255, *rev. denied* 265 Kan. 885 (1998), applies to a claim against a contractor in residential construction defect cases. We conclude that it does and affirm the grant of summary judgment.

*Facts and procedural background*

The essential facts of the case are not in dispute. On December 21, 1993, Prendiville entered into a contract with Young Home Construction, Inc. (Young Construction), in which Young Construction agreed to build a house for Prendiville. In an addendum to the contract, the seller's name was changed from Young Construction to Contemporary Homes, Inc. (Contemporary Homes). Dryvit, an artificial stucco product, was selected by Prendiville as the exterior finish for his house. Young was on-site during the construction of the house and supervised subcontractors and suppliers throughout the process.

Prendiville took possession of the house on November 7, 1994. Also on that date, Larry Young, the president of Contemporary Homes, and Prendiville signed a "NEW HOME WARRANTY," which terminated after 1 year. The written agreement contained a claims procedure that must be followed as a condition precedent to any claim. The agreement also contained a provision where Prendiville acknowledged that Contemporary Homes, its agents, and representatives, made "no warranties or representations regarding the quality and construction of the home not specifically contained in this warranty." The agreement also stated that it did not affect the implied warranties of merchantability and fitness for a particular purpose. Furthermore, the agreement stated the law of Kansas applied to the interpretation and application of the warranty.

Prendiville's basement flooded shortly after he moved into the house. When Prendiville contacted Young, Young arranged for a

subcontractor to install a sump pump in the basement pursuant to the warranty.

Prendiville testified that he noticed water infiltration through the Dryvit siding and into the house in May or June 1999. On March 16, 2000, Prendiville filed this action against Contemporary Homes, Young, Young Construction, Dryvit Systems, Inc. (Dryvit Systems), Contour Products, Inc. (Contour), and Caradco Corporation (Caradco). Prendiville filed an amended petition on October 24, 2000. In the amended petition, Prendiville claimed Contemporary Homes, Young, and Young Construction (collectively referred to as "the defendants") breached the terms of the warranty, were negligent in construction of the house, and violated the Kansas Consumer Protection Act. In the negligence claim, Prendiville specifically stated the defendants were negligent by

"failing to employ that degree of professional skill, diligence, knowledge and attention to detail that [Prendiville] had reason to expect from a reputable home builder charged with the duty to provide building services in a workmanlike manner, and said defendants negligently failed to:

a. Properly select and supervise the workmen on the work site;

b. Properly install or supervise the installation of the Dryvit exterior stucco; and

c. Properly construct a home in accordance with those duties and standards placed upon said defendants by Uniform Building Code practices."

In the pretrial order, Prendiville claimed damages of $76,154.63. The damages were computed as follows: (1) $27,680.63 for replacement cost of windows; (2) $12,250 for labor to install new windows; (3) $4,500 for interior painting after window installation; (4) $27,724 for a complete skim of the exterior of the property; and (5) $4,000 to repaint and caulk. The defendants filed a motion for summary judgment. After a hearing on the motion, the district court granted the summary judgment on the negligence claim, but denied it on the remaining two counts. The district court ruled that Prendiville's negligence claim was barred by the economic loss doctrine, since Prendiville's damages were only to the house itself.

Dryvit Systems and Caradco were voluntarily dismissed from the case with prejudice. Contour was dismissed from the case without prejudice. Additionally, the remaining two counts against the de-

fendants were dismissed without prejudice. Prendiville filed a timely notice of appeal.

## Standard of review

Prendiville claims the district court erred by granting the summary judgment motion on his negligence claim. The standard of review when examining a grant of summary judgment was stated in *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002):

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]"

## The economic loss doctrine

The single issue on appeal is whether the economic loss doctrine applies to a claim against a contractor in residential construction defect cases. The economic loss doctrine states that a buyer of defective goods cannot sue in tort where the injury consists only of damage to the goods themselves. *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866-76, 90 L. Ed. 2d 865, 106 S. Ct. 2295 (1986). Although originally considered a products liability doctrine, its application has been extended to a wide variety of cases. The doctrine is designed to prevent a party from asserting a tort remedy in circumstances governed by the law of contracts. The economic loss doctrine is "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Barnett, *Recovery of Economic Loss in Tort for*

*Construction Defects: A Critical Analysis*, 40 S.C. L. Rev. 891, 894 (1989).

### Recognition of the economic loss doctrine in Kansas

The issue of whether the economic loss doctrine applies to a claim against a contractor in residential construction defect cases is an issue of first impression in Kansas. A brief review of Kansas case law on the economic loss doctrine is helpful. Prior to the enunciation of the economic loss doctrine, Kansas courts recognized the distinction between warranty liability and tort liability in a claim by a home buyer against a contractor for faulty construction. However, it was considered that tort liability was limited to injury to people and damage to property other than the work performed. In *Owings v. Gifford*, 237 Kan. 89, 93-94, 697 P.2d 865 (1985), where the issue was whether the contractor's insurance provided coverage, the court stated:

"When a contractor builds a home, warranties arise both under his contract with the buyer and by operation of tort law. . . . The risk that the builder may incur liability under warranty is a normal part of doing business.

. . . .

"Under operation of law, a second type of risk that arises is *injury to people and damage to property other than the work performed.* Unlike the first type of risk, where liability is limited to the cost of replacement or repair, the duty imposed by law (tort liability) subjects the builder to unlimited liability." (Emphasis added.)

The principles of the economic loss doctrine were discussed in *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan. App. 2d 625, 827 P.2d 1195 (1992). In *Elite Professionals*, the plaintiff was a company engaged in the business of interstate transportation of commodities. The plaintiff sued the manufacturer of a truck refrigeration unit after the unit malfunctioned causing spoilage of a cargo of meat. The plaintiff did not sue for the damage to the refrigeration unit, but did sue for the loss of the meat that was spoiled. The court recognized the principle that recovery for an economic loss is not available in a tort action. However, the court ruled that this principle did not preclude recovery because the plaintiff was attempting to recover damage to other property and not damage to the refrigeration unit. 16 Kan. App. 2d at 633.

In *Koss Construction*, 25 Kan. App. 2d 200, the plaintiff brought suit against the manufacturer of a vibratory roller after the roller caught fire and was damaged. Koss alleged that the fire was caused by defective hydraulic hoses and sought judgment only for damage to the roller itself. The district court granted the manufacturer's motion for judgment on the pleadings because the plaintiff could not recover for simple economic loss by claiming negligence or strict liability. This court affirmed the district court's decision and expressly adopted the economic loss doctrine established in *East River*. 25 Kan. App. 2d at 205-06. The court in *Koss Construction* went on to hold: "[A] commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damage to the goods themselves." 25 Kan. App. 2d at 207.

The economic loss doctrine was explained further in *Jordan v. Case Corp.*, 26 Kan. App. 2d 742, 993 P.2d 650 (1999), *rev. denied* 269 Kan. 933 (2000). In *Jordan*, the plaintiff brought suit against the manufacturer and supplier of a combine after the engine to the combine caught fire and destroyed the combine, along with the wheat inside the combine. The plaintiff claimed it should recover based on negligence, strict liability, implied warranty, and res ipsa loquitur. The district court granted summary judgment to the defendant based on the holding in *Koss Construction*. Addressing only the negligence and strict liability theories, this court affirmed. In making its ruling, this court expressly stated that the economic loss doctrine applies equally to a consumer of defective goods as it does to a commercial buyer of defective goods. 26 Kan. App. 2d at 744.

The economic loss doctrine was recently discussed in *Northwest Arkansas Masonry, Inc. v. Summit Specialty Products, Inc.*, 29 Kan. App. 2d 735, 31 P.3d 982, *rev. denied* 272 Kan. 1419 (2001). The plaintiff was a subcontractor that purchased Type S masonry cement powder from a supplier. The plaintiff used this powder to make walls for a commercial building. The walls did not meet the specified strength, and the plaintiff believed it was the result of the cement powder. The plaintiff sued the manufacturer, supplier, and packager of the cement powder for damage to the walls. The district court granted summary judgment in favor of the supplier and

a directed verdict in favor of the other parties based upon the economic loss doctrine. On appeal, the plaintiff only sought damages for the other materials to which the cement powder had been applied. The court did not accept plaintiff's contention that it was only pursuing damages to "other property" and affirmed the district court's decision. 29 Kan. App. 2d at 744-45.

Another recent case that discussed the economic loss doctrine is *Full Faith Church of Love West, Inc. v. Hoover Treated Wood*, 224 F. Supp. 2d 1285 (D. Kan. 2002). In *Full Faith*, a building owner brought a negligence claim *inter alia* against the manufacturer of a fire retardant chemical product that caused the roof structure to decay and lose strength. The building owner claimed damages to the roof caused it to incur costs to

"(1) inspect and test the existing roof system; (2) design and repair the existing roof structure; (3) repair and replace other property damaged as a result of the treated wood deterioration; and (4) relocate students and staff during roof repairs and during periods in which the facilities are unsafe. [Citation omitted.]" 224 F. Supp. 2d at 1290.

The court ruled that the *Northwest Arkansas* decision precluded the building owner from recovering for any damages other than those alleged in the third category of damages. 224 F. Supp. 2d at 1290. It was unclear what the "other property" was in this case; however, the court had to assume the allegation that "other property" was damaged was true because it was ruling on a motion to dismiss. 224 F. Supp. 2d at 1290.

### *Application of the economic loss doctrine to residential construction defect cases*

As the foregoing cases indicate, the economic loss doctrine has been applied in Kansas to many situations, including commercial construction defect cases. The defendants argue that application of the doctrine to residential construction defect cases is the next logical step.

Prendiville, however, argues that a negligence action is appropriate in the residential construction context. Prendiville argues that a house is not a "product" and that he contracted for the delivery of competent and workmanlike services from the contrac-

tor. He claims that the negligent services caused the damage and not a defective product.

The defendants counter that Prendiville ultimately purchased a house and the land on which it was situated. A house, like most other products, is made up of different parts and requires services to be completed. If Prendiville's argument is accepted, the defendants assert that the economic loss doctrine would be severely limited because a party could always claim that it was purchasing the workmanship that resulted in the product and not the final product itself.

Prendiville relies on *Tamarac Dev. Co. v. Delamater, Freund & Assocs.*, 234 Kan. 618, 675 P.2d 361 (1984), *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P.2d 986 (1959), *Ware v. Christenberry*, 7 Kan. App. 2d 1, 637 P.2d 452 (1981), and *Scantlin v. Superior Homes, Inc.*, 6 Kan. App. 2d 144, 627 P.2d 825 (1981). However, all of these cases hold that a claim for breach of an *implied warranty*, not an express warranty, may be brought in contract or tort. In this case, Prendiville had an express new home warranty and did not need to rely on implied warranties. Furthermore, all of these cases predate *East River*, 476 U.S. 858, and *Koss Construction*, 25 Kan. App. 2d 200, and are of limited precedential value.

Prendiville also points to *Kristek v. Catron*, 7 Kan. App. 2d 495, 644 P.2d 480, *rev. denied* 231 Kan. 800 (1982), where a homeowner brought suit against the contractor for negligent construction. In *Kristek*, the plaintiff was a third party, who lacked privity of contract with the contractor. In this case, however, Prendiville is not a third party to the transaction and does possess privity of contract with Young. Additionally, the economic loss doctrine was not discussed in *Kristek*.

Other jurisdictions have held that the economic loss doctrine applies to claims against contractors in residential construction defect cases. In *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000), the court ruled that a class of townhouse owners could not recover for damages resulting from water intrusion in a negligence action against subcontractors who framed the buildings. The court recognized that a house is not a "product" under products

liability law, but still held that the economic loss doctrine applied. The court held: "We conclude that damages sought, in tort, for economic losses from a defective building are just as offensive to tort law as damages sought for economic losses stemming from a defective product." 116 Nev. at 261; see also *Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 444-45, 690 P.2d 158 (1984) (holding second purchaser's failure to show damage to more than the structure itself prohibited a claim of negligence against the builder); *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 176-78, 441 N.E.2d 324 (1982) (holding second owners of house could not recover in a negligence action against a builder for economic damages); *Crowder v. Vandendeale*, 564 S.W.2d 879, 884 (Mo. 1978), *overruled on other grounds by Sharp Brothers Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901 (Mo. 1986) (holding a builder's liability for structural defects is in contract and that a second theory based on tort should not be allowed); *Atherton Condominium Ass'n v. Blume Dev. Co.*, 115 Wash. 2d 506, 526-27, 799 P.2d 250 (1990) (holding owners' failure to claim any personal or physical injury to other property prohibited a claim of negligent construction).

Some jurisdictions have not applied the economic loss doctrine in construction defect cases. In *Rowe v. Akin & Flanders*, 240 Ga. App. 766, 769, 525 S.E.2d 123 (1999), the court rejected the use of the economic loss doctrine in a negligent construction suit by a landowner against a contractor for negligent construction of a parking area. The court specifically stated:

" 'The "economic loss" versus "physical damage" dichotomy that is used in products liability cases can find no application in this [negligent construction] case. . . . "(I)ndependently of any duty under the [paving] contract, the law imposed upon [both the general contractor, defendant A&F, and its subcontractor, defendant FCI,] the duty not to negligently and wrongfully injure and damage the property of [the owner, Rowe]." [Citation omitted.]' " 240 Ga. App. at 769 (bracketed changes in original).

In Delaware, the resolution of this issue was made by the legislature. In *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992), the court applied the economic loss doctrine in an action by a homeowner against the seller of building kits. The court con-

cluded that the economic loss doctrine precluded the plaintiff's suit. 608 A.2d at 1201. In response to the decision in *Danforth*, the Delaware General Assembly passed the Home Owners Protection Act. See Del. Code Ann. tit. 6, § 3651-52 (1999). This act states:

"No action based in tort to recover damages resulting from negligence in the construction or manner of construction of an improvement to residential real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction shall be barred solely on the ground that the only losses suffered are economic in nature." Del. Code Ann. tit. 6, § 3652.

Both parties argue that public policy supports their positions. This court has stated some of the general policies that support the application of the economic loss doctrine as follows: "(a) It encourages the party best situated to assess the risk of economic loss to insure against it; (b) it maintains a distinction between tort and contract law; and (c) it protects a party's freedom to allocate economic risks by contract." *Jordan*, 26 Kan. App. 2d at 744.

The defendants claim the policy factors listed in *Jordan* favor application of the economic loss doctrine in this case. By applying the economic loss doctrine to residential construction defect cases, the defendants argue that this court would be protecting the freedom of parties to allocate economic risks by contract. In *Ford Motor Cred. Co. v. Suburban Ford*, 237 Kan. 195, 203-04, 699 P.2d 992, *cert. denied* 474 U.S. 995 (1985), the court explained in depth the problem with confusing contract law and tort law. Essentially, the court stated that when parties enter into a contract they set out their duties and obligations, while in tort law the duties and obligations of the parties are set forth by the legislature. The effect of confusing tort law with contract law is to nullify the limited liability for which the parties bargained. This social intervention into contract law by tort law should only be tolerated in the most extreme cases. 237 Kan. at 203.

If Prendiville is allowed to proceed with his negligence claim, this would essentially nullify the express warranty agreed upon by the parties. The warranty specifically allowed Prendiville to make claims regarding defects or deficiencies in the house for 1 year

following the issuance of the warranty. The effect of allowing Prendiville to proceed on the negligence claim is to extend the defendants' potential for liability for a greater period of time.

Prendiville claims the nature of a purchase of a house from a contractor supports his argument. He claims that due to the expense of a house, and the inexperience of a buyer in negotiating contracts, a buyer should not be precluded from maintaining a negligence action against a contractor. This argument was best addressed in *Casa Clara v. Charley Toppino and Sons,* 620 So. 2d 1244, 1247 (Fla. 1993), when the court stated:

"Buying a house is the largest investment many consumers ever make, [citation omitted] and homeowners are an appealing, sympathetic class. If a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law. [Citation omitted.] There are protections for homebuyers, however, such as statutory warranties, the general warranty of habitability, and the duty of sellers to disclose defects, as well as the ability of purchasers to inspect houses for defects. Coupled with homebuyers' power to bargain over price, these protections must be viewed as sufficient when compared with the mischief that could be caused by allowing tort recovery for purely economic losses."

After analyzing the Kansas case law, the law of other jurisdictions, and the policy arguments, we find no compelling reason why the economic loss doctrine should not be applied to a claim against a contractor in residential construction defect cases. Whether or not a house is deemed to be a "product," we find that the principles underlying the economic loss doctrine apply to a residential construction transaction where the rights and liabilities of the parties are governed by contract and an express warranty. This does not bar all of Prendiville's claims against the defendants, but only those claims based on tort. If an exception to the economic loss doctrine is to be made for homeowners, it should be up to the state legislature, as we have seen in Delaware. We note that in 2003, the legislature enacted the Kansas Residential Construction Defect Act, K.S.A. 2003 Supp. 60-4701 *et seq*. See L. 2003, ch. 74. This Act primarily addresses notice requirements that must be met by a homeowner prior to filing a lawsuit against a contractor for con-

struction defects. However, the Act is silent concerning the legal theories upon which such a lawsuit may be based.

*Prendiville has not claimed damage to "other property"*

The economic loss doctrine does not preclude recovery in tort for damage caused by defective goods to "other property." *Northwest Arkansas*, 29 Kan. App. 2d at 741. Prendiville argues his claim should not be barred by the economic loss doctrine because he is not seeking recovery for damage to the Dryvit exterior, but is seeking recovery for damages to other parts of the house. Prendiville's argument is without merit.

Kansas has adopted the integrated system approach, which states that " '[d]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to "other property" which precludes the application of the economic loss doctrine.' [Citation omitted.]" *Northwest Arkansas*, 29 Kan. App. 2d at 744. Furthermore, in *Northwest Arkansas*, the court favorably cited cases that used the integrated system approach to buildings. 29 Kan. App. 2d at 743-44. The court in *Northwest Arkansas*, specifically held that the wall that was faulty due to the defective cement powder was an integrated system, so that the plaintiff could not recover for damages in tort to other components that made up the wall. 29 Kan. App. 2d at 744.

*Northwest Arkansas* is similar to the present case. Prendiville's house is an integrated system. Prendiville has not claimed any damages other than to the structure of the house. Therefore, Prendiville's damages do not constitute "other property."

*Conclusion*

We hold the economic loss doctrine recognized in Kansas in *Koss Construction v. Caterpillar, Inc.*, 25 Kan. App. 2d 200, 209, 960 P.2d 255, *rev. denied* 265 Kan. 885 (1998), and subsequent cases applies to a claim against a contractor in residential construction defect cases where the rights and liabilities of the parties are governed by contract and an express warranty. Accordingly, Prendiville is barred from bringing a tort claim against his contractor for purely economic loss consisting of damage to the house itself. The district

court did not err in granting summary judgment against Prendiville on his negligence claim.

Affirmed.