(304 P.3d 689)
No. 107,696

GREGORY COKER, *Appellant*, v. MICHAEL D. SILER, *Defendant*, and J.M.C. CONSTRUCTION, INC., and JOHN M. CHANEY, *Appellees*.

Opinion filed May 3, 2013.

*Todd B. Butler* and *Stephanie B. Poyer*, of Butler & Associates, P.A., of Topeka, for appellant.

*Thomas H. Johnson*, of Petefish, Immel, Heeb & Hird, LLP, of Lawrence, for appellees.

Before MCANANY, P.J., BUSER and STANDRIDGE, JJ.

STANDRIDGE, J.: After Gregory Coker's new home was damaged, he filed a lawsuit for breach of express warranty against the company that sold him the house and for negligence against John M. Chaney, the plumber whose act caused the damage. The district court ultimately dismissed Coker's claim of negligence against Chaney based on the economic loss doctrine, which—as it existed under Kansas law at the time—prevented a homeowner from bringing a tort action under circumstances governed by contract. But a subsequent Kansas Supreme Court ruling has refused to extend the economic loss doctrine to homeowner claims against construction contractors. Thus, we must reverse the district court's decision and remand the case so that Coker may go forward with his tort claim against Chaney.

## FACTS

In August 2006, J.M.C. Construction (J.M.C.) purchased a partially built house from Michael D. Siler. At the end of that month, Chaney, president of J.M.C., personally installed the main water line into the residence.

In July 2007, Coker purchased the house from J.M.C. The contract for sale included a 1-year express warranty provision, which stated:

"Seller agrees to warrant the improvements on the property for defects in materials and workmanship for a period of one year from the date of possession and agrees to pass on to Buyer all warranties provided on mechanical equipment installed on the property."

Coker took possession of the residence in September 2007.

In April 2008, Coker received a higher-than-average water bill but attributed it to watering the lawn during that time. However, in May 2008, he received another high water bill. Finding no evidence of a leak above the ground, Coker contacted J.M.C. On May 9, 2008, Chaney came to the home along with R.D. Johnson Excavation and dug up the water line. They discovered that the main water line had separated from a coupling, creating a ¼- to ⅜-inch gap through which water was escaping. An engineer hired by Coker determined that the water went underneath the foundation slab of the home and caused heaving, which resulted in cracks in the walls and uneven doors.

Coker sued Siler, J.M.C., and Chaney (defendants) for negligence, breach of implied warranty, and strict liability. He also claimed breach of express warranty against J.M.C. and Chaney. Coker asserted $79,697.56 in damages.

J.M.C. and Chaney filed a motion for summary judgment, which the district court granted in part. The district court denied the defendants' motion for summary judgment on the breach of express warranty claim based on the fact that Coker offered evidence through an expert's testimony sufficient to support his position that the cause of the leak was within the defendants' exclusive control. The district court dismissed Coker's negligence, strict liability, and breach of implied warranty claims against J.M.C. and Chaney because they were barred under the economic loss doctrine.

Upon the defendants' motion for clarification, the district court thereafter dismissed Coker's breach of express warranty claim against Chaney based on a lack of evidence in the record to support contractual privity between Coker and Chaney in his individual

capacity. The district court also denied Coker's motion to reconsider its order dismissing his claims of negligence, strict liability, and breach of implied warranty against Chaney.

On December 5, 2011, Coker accepted an offer of judgment on the breach of express warranty claim from J.M.C. in the amount of $40,000. The district court entered a final journal entry of judgment on January 25, 2012, and also dismissed the claims against Siler with prejudice upon Coker's oral motion.

## ANALYSIS

Coker claims the district court erred by granting summary judgment against him on the negligence and implied warranty claims he brought against Chaney. Specifically, Coker challenges the district court's decision finding that the economic loss doctrine barred his negligence and implied warranty claims against Chaney. Specifically, Coker argues the district court's decision was based on *Prendiville v. Contemporary Homes, Inc.*, 32 Kan. App. 2d 435, 83 P.3d 1257, *rev. denied* 278 Kan. 847 (2004), which—although good law at the time the court issued its opinion—subsequently was overruled by the Kansas Supreme Court in *David v. Hett*, 293 Kan. 679, 699, 270 P.3d 1102 (2011).

We review a district court's decision to grant or deny a motion for summary judgment as follows:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any·material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive.issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" *Scott v. Hughes*, 294 Kan. 403, 411, 275 P.3d 890 (2012).

## 1. *Applicability of the Economic Loss Doctrine*

The economic loss doctrine is a judicially created rule that governs the ability of a plaintiff to bring a tort action when the only damages claimed by such plaintiff are economic losses. See *David*, 293 Kan. at 683, 687-88. The doctrine was an attempt to prevent contract law from dissolving into tort law by drawing a distinction between commercial transactions, where contract law protects economic expectations, and consumer transactions, where tort law remedies physical injuries to individual consumers. See 293 Kan. at 686, 692, 698. The doctrine originated in product liability law to prevent the purchaser of a defective product from suing in tort when the damages claimed were purely economic in nature, such as the cost to repair or replace the defective product. To recover in tort, the doctrine required the purchaser to demonstrate more than the product's failure to meet economic expectations; the purchaser had to demonstrate some harm above and beyond a broken contractual promise. See *Koss Construction v. Caterpillar, Inc.*, 25 Kan. App. 2d 200, 205, 960 P.2d 255, *rev. denied* 265 Kan. 885 (1998).

Our Court of Appeals first adopted the economic loss doctrine in a commercial product liability case in *Koss Construction*, 25 Kan. App. 2d at 205. Six years later, our court expanded the scope of the doctrine by applying it to cases relating to residential home construction. *Prendiville*, 32 Kan. App. 2d at 445-46. In *Prendiville*, a homeowner contracted with the defendants to build a house and signed a 1-year new home warranty. More than 4 years later, the plaintiff noticed water infiltration through the stucco siding and sued the siding company, the construction contractor, and the contractor company's president for breach of warranty, negligent construction, and violations of the Kansas Consumer Protection Act (KCPA). A panel of this court held that the plaintiff was barred from bringing a tort claim against his contractor for purely economic loss. 32 Kan. App. 2d at 446. In so holding, the court noted that applying the economic loss doctrine to residential home construction services was consistent with the policy considerations underlying the doctrine's initial adoption:

"[W]e find no compelling reason why the economic loss doctrine should not be applied to a claim against a contractor in residential construction defect cases. Whether or not a house is deemed to be a 'product,' we find that the principles underlying the economic loss doctrine apply to a residential construction transaction where the rights and liabilities of the parties are governed by contract and express warranty. This does not bar all of [plaintiff's] claims against the defendants, but only those claims based on tort." 32 Kan. App. 2d at 445.

As noted above, however, the Kansas Supreme Court recently overruled *Prendiville* in the case of *David*. In *David*, the Davids acted as their own general contractor to build a home and hired David Hett under an oral agreement for the excavation, basement, and concrete work. Five years later, the Davids experienced unusual settling in their home's garage and basement areas and sued Hett for breach of contract, negligence, fraud, fraudulent concealment, and violation of the KCPA. Relying on *Prendiville*, the district court found the economic loss doctrine prevented the Davids from bringing a tort action under circumstances governed by contract. A panel of this court affirmed, and the Kansas Supreme Court granted the Davids' petition for review in order to decide whether the economic loss doctrine should bar claims by homeowners seeking to recover economic damages resulting from negligently performed residential construction services.

The court in *David* began its discussion with a comprehensive summary of the history of the economic loss doctrine and its development in Kansas. The court ultimately found the rationale supporting the economic loss doctrine failed to justify a departure from a long line of cases in Kansas that establish a homeowner's right to assert claims against residential contractors "in tort, contract, or both, depending on the nature of the duty giving rise to each claim." 293 Kan. at 680, 698-99. In support of this finding, the court noted that application of warranty law offers very limited protection for homeowners because the nature of home defects and damages that arise from them are often not discoverable until after a warranty period expires. The court further noted that residential construction contracts rarely involved the sophisticated parties with equal bargaining positions present in commercial products cases. 293 Kan. at 699-700. Finally, the court noted it found the

economic loss doctrine's application to home construction troubling because it focused on the damages rather than the duty breached, which could allow a contractor to escape liability simply because the negligence was discovered before someone was harmed. 293 Kan. at 700.

Having determined that the economic loss doctrine does not bar claims by homeowners seeking to recover economic damages resulting from negligently performed residential construction services, the court moved on to determine whether the gravamen of the Davids' claim arose in tort. In so doing, the court adopted the pre-*Prendiville* independent legal duty analysis used by Kansas courts:

"Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. *Nelson v. Nelson*, 288 Kan. 570, 582, 205 P.3d 715 (2009); *Malone* [*v. University of Kansas Medical Center*], 220 Kan. [371,] 374 [, 552 P.2d 885 (1976)]. A breach of contract claim is the failure to perform a duty arising from a contract, and a tort claim is the violation of duty imposed by law, independent of the contract. 220 Kan. at 374. But the fact that the parties have a contractual relationship does not necessarily control the inquiry because legal duties may arise even though the parties also have a contract, so that ' "[w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of circumstances surrounding or attending the transaction, the breach of the duty is a tort." ' 220 Kan. at 375 (quoting *Yeager v. National Cooperative Refinery Ass'n*, 205 Kan. 504, 509, 470 P.2d 797 [1970])." *David*, 293 Kan. at 701.

Finding that the appellate record did not reveal whether the Davids had supported their negligence claims by citing any independent duty owed by Hett that was breached, the court remanded the case to the district court to determine whether the Davids' claims arose in tort or contract. 293 Kan. at 702-03.

In this case, the district court relied on *Prendiville* to support its conclusion that the economic loss doctrine applied to the residential construction at issue here. The district court noted that although damages to "other property" precludes application of the economic loss doctrine, Kansas has adopted the integrated systems approach in which damage by a defective component of an integrated system to the system as a whole or any system component is not damage to "other property." Citing *Prendiville* and cases

from other jurisdictions, the district court concluded that the coupling at issue here was within the integrated system of the house and the damage caused by the leak was "consequential economic loss" placing it within the economic loss doctrine's reach. As a result, the court held that Coker's negligence, strict liability, and breach of implied warranty causes of action against J.M.C. were barred under the doctrine. The court also found Coker's negligence, strict liability, and breach of implied warranty claims against Chaney were barred, because "the president of a construction company, who has acted within that capacity, is sufficiently a party to the contract to defeat a lack-of-contractual privity claim."

Although the district court properly relied on the law as it existed at the time of its ruling, the intervening change in the law necessarily renders the conclusion reached by the district court erroneous as a matter of law. Although this means that the economic loss doctrine does not preclude Coker from seeking economic damages from Chaney for negligently performed residential construction services, Coker's tort claims will survive only if Coker can establish that Chaney owed Coker a duty imposed by law, independent of the underlying construction contract. See *David*, 293 Kan. at 701.

### 2. *A Legal Duty Imposed by Law, Independent of the Contract*

Coker contends that Chaney owed him a legal duty to perform his plumbing services free from negligence and that this duty exists independent of the underlying construction contract. The existence of a legal duty is a question of law over which this court exercises unlimited review. *Glassman v. Costello*, 267 Kan. 509, 521, 986 P.2d 1050 (1999). Thus, if a court concludes that a defendant accused of negligence did not have a duty to act in a certain manner toward the plaintiff, summary judgment is proper. *Elstun v. Spangles, Inc.*, 289 Kan. 754, 757, 217 P.3d 450 (2009).

In his brief, Coker claims Chaney had a legal duty to perform plumbing services free from negligence under the following two theories, both of which existed independent of the underlying construction contract: (1) A construction contractor's implied warranty that the work will be done in a workmanlike manner, using appro-

priate care and skill, and (2) a construction contractor's liability for any personal or economic injury to a third party resulting from work negligently performed.

### a.  *Duty Arising Out of Implied Warranty*

An implied warranty is one arising by operation of law and not by express agreement of the parties, the rationale being to protect a party from loss in circumstances where the contract fails to expressly state the prevailing standard of care. See *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, Syl. ¶ 6, 732 P.2d 1260 (1987). "The law in Kansas and, indeed, the general rule throughout the United States is that there is 'implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner.' [Citations omitted.]" *Zenda Grain & Supply Co. v. Farmland Industries, Inc.*, 20 Kan. App. 2d 728, 738, 894 P.2d 881, *rev. denied* 257 Kan. 1096 (1995). Kansas courts have found such implied warranties of workmanlike performance in various agreements, including building contractors and subcontractors. 20 Kan. App. 2d at 739 (citing *Ware v. Christenberry*, 7 Kan. App. 2d 1, 637 P.2d 452 [1981]).

Notably, implied warranties of workmanlike performance exist only when the parties have negotiated an underlying agreement for consideration and the agreement does not expressly state that the performance will be carried out under the prevailing standard of care for the industry. *Zenda Grain & Supply Co.*, 20 Kan. App. 2d at 737.

Because there can be no implied warranty of workmanlike performance in the absence of an underlying agreement between the parties to provide services, we must now determine whether Coker and Chaney entered into such an agreement. As Coker points out, the district court came to two seemingly contradictory conclusions with respect to this issue on summary judgment. In finding the economic loss doctrine applied to bar Coker's tort claims against Chaney, the court concluded in its memorandum decision that "the president of a construction company, who has acted within that capacity, is sufficiently a party to the contract to defeat a lack-of-contractual privity claim." In response to Chaney's motion to clar-

ify, however, the court explained in a supplemental memorandum decision that Chaney, in his individual capacity as a plumber performing work for Coker, was not a party to the J.M.C. contract.

These holdings, however, are not mutually exclusive. The district court correctly made a distinction between Chaney's acts within his capacity as president of J.M.C. and his acts as an individual. Although Chaney may have been a party to the contract with Coker as president of J.M.C., the district court correctly held Chaney was not a party to that contract in Chaney's capacity as an individual plumber. The record in this case reflects that Coker's implied warranty claim against Chaney is based on Chaney's failure as an individual plumber to provide services skillfully and in a workmanlike manner. Because there is no evidence of an underlying agreement between Coker and Chaney to provide those plumbing services in the first instance; Coker's claim that Chaney breached an implied duty within such a contract fails as a matter of law.

### b. *Contractor Liability for Injury to Third Party*

As an alternative theory of recovery, Coker cites to this court's decision in *Kristek v. Catron*, 7 Kan. App. 2d 495, 499, 644 P.2d 480, *rev. denied* 231 Kan. 800 (1982), to establish that Chaney had a legal duty—independent of any contract—to perform plumbing services without causing economic injury to third parties. In *Kristek*, a builder contracted with and built a house for an investment company. The investment company later sold the house to the plaintiff. After the plaintiff noticed stains on the ceiling and walls of the house resulting from a water leak, the plaintiff sued the builder for damages on a theory of negligent construction. The court held:

"[A] construction contractor is liable for any injury to a third party, personal or economic, resulting from work negligently performed even though the injury occurs after completion of the work and its acceptance by the owner, when such injury is reasonably certain to occur if the work is negligently done." 7 Kan. App. 2d at 499.

Applying the rule enunciated in *Kristek* to the facts here, Chaney is liable for injuries sustained by third parties as a result of any torts he may have committed as an individual plumber. Under this the-

ory of recovery, then, Chaney owed Coker a legal duty independent of Coker's contract with J.M.C. Because the district court found Coker offered sufficient evidence to present a question of fact as to whether there was a defect that caused the leak at the time the home left J.M.C.'s possession, Coker's claim of negligence against Chaney in his individual capacity as a plumber must be reinstated.

Reversed and remanded with directions to reinstate Coker's claim of negligence against Chaney in his individual capacity as a plumber.