**KESTREL HOLDINGS I, L.L.C., Plaintiff,**

v.

**LEARJET INC. and BOMBARDIER INC., Defendants.**

No. CIV.A. 02–2388–CM.

United States District Court, D. Kansas.

Feb. 24, 2004.

David R. Frye, Gary D. Justis, Steven J. Brady, Lathrop & Gage, LC, Overland Park, KS, for Plaintiff.

Andrew M. DeMarea, Jason L. Bush, Gregory L. Musil, Shughart Thomson & Kilroy, Overland Park, KS, Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, TX, for Defendants.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter comes before the court on defendants Learjet Inc. and Bombardier

Inc.'s Motion to Dismiss Counts II, III, IV, VII and VIII of Plaintiff's First Amended Complaint (Doc. 46) and defendants' Motion for Leave to File Motion to Dismiss Out of Time (Doc. 53).

## I. Background

This lawsuit arises out of plaintiff's purchase of a Learjet Model 60 aircraft (the aircraft) from defendant Learjet. On or about March 1, 2001, defendant Learjet entered into a written Airplane Purchase Agreement (the purchase agreement) with Borders Technology Company, L.L.C. (Borders) in which Borders agreed to purchase the aircraft from defendant Learjet. Subsequently, on August 27, 2001, Borders assigned its right, title and interest in, to and under the purchase agreement to plaintiff.

Plaintiff took delivery of the aircraft from defendant Learjet on February 15, 2002. Plaintiff's first amended complaint alleges various causes of actions against Learjet and its parent company, defendant Bombardier Inc., for breach of contract (Count I), breach of implied warranties (Counts V and VI), common law negligence (Count IV), fraud (Count VII), negligent misrepresentation (Count VIII), and violations of the Kansas Products Liability Act (KPLA) (Count II) and the Kansas Consumer Protection Act (KCPA) (Count III). The claims are premised on allegations that defendants failed to deliver an airworthy aircraft. Plaintiff claims to have incurred substantial damages, such as service costs for an unusable aircraft, costs of using alternative aircrafts, reduced value of the aircraft, lost employee and contractor time and expenses, lost use of the aircraft, and legal fees and expenses.

## II. Motion for Leave to File Out of Time

■ As an initial matter, the court addresses the parties' arguments with regard to defendants' Motion for Leave to File Motion to Dismiss Out of Time. Plaintiff contends that defendants' Motion to Dismiss is untimely as to Counts II, III and IV of its first amended complaint because those claims were included in plaintiff's original complaint filed in August 2002, and defendant had a January 31, 2003, deadline to file any motions to dismiss claims in the original complaint. Plaintiff moved to amend its original complaint on January 31, 2003, which the court granted on February 20, 2003. Defendant subsequently filed its Motion to Dismiss on April 4, 2003.

Because plaintiff re-pled in the first amended complaint all of its claims, in addition to making changes to paragraphs that contain general allegations common to all counts in the original complaint and the first amended complaint, the court grants defendants' Motion for Leave to File Motion to Dismiss Out of Time.

## III. Legal Standard for Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled

to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

■ The court notes that, in making its ruling on defendants' Motion to Dismiss, it has considered the purchase agreement, including its exhibits and amendments, that defendants attached as a sealed exhibit to their Motion to Dismiss, even though the purchase agreement was not originally attached to plaintiff's complaint. Normally, the court does not look beyond the complaint itself when ruling on a 12(b)(6) motion. *See Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 960 (10th Cir. 2001). However, "it is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.; see also MacArthur v. San Juan County,* 309 F.3d 1216, 1221 (10th Cir.2002). Plaintiff does not dispute the authenticity of the purchase agreement, and plaintiff's claims are indisputably premised on the purchase agreement. In this type of situation, the court may consider the purchase agreement without converting defendants' Motion to Dismiss into a request for summary judgment under Fed.R.Civ.P. 56. *Id.*

## IV. Analysis

### A. KPLA and Negligence Claims (Counts II, IV and VIII)

Defendants claim that plaintiff's KPLA and negligence claims fail to state claims for relief because plaintiff seeks only economic losses, and Kansas law bars recovery of economic losses in tort actions. Defendants argue that, because plaintiff's complaint does not allege that any person has suffered personal injury and does not allege property damage resulting from the alleged defect in the aircraft, plaintiff's tort claims fail. Plaintiff contends that the court need not address the issue of the type of damages plaintiff is claiming, because plaintiff is permitted to bring tort claims against defendants under the "unreasonably dangerous exception to the economic loss doctrine" pursuant to *Sithon Maritime Company v. Holiday Mansion,* 983 F.Supp. 977, 992 (D.Kan.1997).

■ The KPLA applies to all product liability claims, regardless of the theory of recovery. *Savina v. Sterling Drug, Inc.,* 247 Kan. 105, 126, 795 P.2d 915 (1990). A product liability claim may be brought under the KPLA for "harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product." Kan. Stat. Ann. § 60–3302(c). Harm under the KPLA includes damage to property and personal injuries, but not direct or consequential economic loss. *Id.* § 60–3302(d).

■ Kansas courts have determined that economic loss includes damages for inadequate value, costs of repair, replacement costs, and loss of use of a defective product. *N.W. Ark. Masonry, Inc. v. Summit Specialty Prods., Inc.,* 29 Kan. App.2d 735, 742, 31 P.3d 982 (2001); *Koss Constr. v. Caterpillar, Inc.,* 25 Kan.App.2d 200, 206, 960 P.2d 255 (1998); *Elite Prof'ls, Inc. v. Carrier Corp.,* 16 Kan.App.2d 625, 633, 827 P.2d 1195 (1992). "Generally, economic loss is a result of the failure of the product to perform to the level expected by the buyer, which is the core concern of traditional contract law." *N.W. Ark. Masonry, Inc.,* 29 Kan.App.2d at 742, 31 P.3d 982 (citing *East River S.S. Corp. v.*

*Transamerica Delaval, Inc.*, 476 U.S. 858, 870, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). The economic loss doctrine does not preclude recovery for physical damage a product caused to other property. *Koss Constr.*, 25 Kan.App.2d at 206, 960 P.2d 255.

In a products liability action, "damage which is limited to the defective product itself is essentially economic loss." *Id.* at 207, 960 P.2d 255. Therefore, "a commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damages to the goods themselves. Under Kansas law, the economic loss doctrine applies to a claim for damage to the product itself." *Id.; see also N.W. Ark. Masonry, Inc.*, 29 Kan.App.2d at 743, 31 P.3d 982. Moreover, Kansas courts since the *Sithon* decision have rejected the unreasonably dangerous exception to the economic loss rule. "The Supreme Court expressly rejected an attempt to distinguish between cases based on the manner in which the product is injured. Regardless of how it occurs, damage which is limited to the defective product itself is essentially economic loss." *Id.* at 206–207, 960 P.2d 255 (citation omitted).

In its first amended complaint, plaintiff alleges the following damages: service costs for an unusable aircraft; costs of using alternative aircraft; reduced value of the aircraft; lost employee and contractor time and expenses; and lost use of the aircraft. Plaintiff's alleged damages relate to the aircraft itself—not damage to other property or personal physical injuries. *See Elite Prof'ls, Inc.*, 16 Kan. App.2d at 633, 827 P.2d 1195 (concluding that damages for inadequate value, costs of repair, replacement costs, and loss of use of a defective product all relate to the defective property itself and not damage to other property); *see also Koss*, 25 Kan. App.2d at 206, 960 P.2d 255; Kan. Stat. Ann. § 60–3302(d). Therefore, plaintiff's KPLA and negligence claims are barred by the economic loss doctrine.

Plaintiff alternatively argues that it should be permitted to recover its alleged damages as non-economic damages in tort if the alleged damages are not recoverable under its breach of contract claim. The court disagrees. The damages plaintiff alleges are all economic losses that relate to the allegedly defective aircraft. The fact that plaintiff has no contractual remedy for such losses does not void the operation of the economic loss doctrine.[1] *See N.W. Ark. Masonry, Inc.*, 29 Kan.App.2d at 745, 31 P.3d 982 (upholding dismissal of plaintiff's product liability claim under the economic loss doctrine even though plaintiff had no contractual remedy for the alleged damages). The court thus dismisses plaintiff's KPLA and negligence claims (Counts II, IV and VIII).

## B. KCPA Claim (Count III)

Defendants claim that plaintiff cannot establish that it is a consumer (an individual or proprietor) within the meaning of the KCPA, which is necessary to invoke the protection of the KCPA. Defendants assert that plaintiff is a limited liability corporation and thus has no standing to sue under the KCPA. Plaintiff argues that because Peter Mason and Ross Manire, as individuals, assumed specific liability for the aircraft, the corporate entity may maintain an action under the KCPA.

Kan. Stat. Ann. § 50–624(b) limits the definition of "consumers" under the KCPA to "individuals" and "sole proprietors." Thus, "a corporation or similar

---

1. The court declines to analyze whether plaintiff actually has a contractual remedy for such losses as that issue is not before the court in the current Motion to Dismiss.

entity that has suffered an injury as a result of a 'deceptive' or 'unconscionable' act or practice cannot assert a claim under the KCPA." *Wayman v. Amoco Oil Co.,* 923 F.Supp. 1322, 1363 (D.Kan.1996). Rather, the individual or sole proprietor must have suffered the injury and must make the claim. *Id.; see also Finstad v. Washburn Univ. of Topeka,* 252 Kan. 465, 472, 845 P.2d 685 (1993).

Plaintiff claims that, similar to the plaintiffs in *Wayman v. Amoco Oil Company,* Mason and Manire are individually liable for the aircraft, and thus plaintiff may maintain a KCPA action. However, in *Wayman,* the plaintiffs were individuals who actually signed agreements with the defendant, Amoco. The *Wayman* court held that, even though a corporate entity made official payment under the plaintiffs' agreements with Amoco, the individual plaintiffs actually signed the agreements in their individual capacities. The agreements were between Amoco and the individuals, not two corporations, and the injuries were therefore sustained by the individuals, who had standing to bring KCPA claims. *Wayman,* 923 F.Supp. at 1363–64.

In this case, the agreement to purchase the aircraft is between plaintiff and defendant Learjet, two corporations. Accepting as true the facts set forth in plaintiff's complaint, the court finds no evidence that the liability plaintiff assumed in purchasing the aircraft was individual in nature to Mason and Manire. In fact, amendments two and three to the airplane purchase agreement state that plaintiff, as successor in interest to Borders, is the purchaser of the aircraft. Although Mason signed the amendments to the purchase agreement, he did so in his capacity as plaintiff's president, not as an individual. There is no mention of Mason and Manire anywhere in the purchase agreement as having individual liability for the aircraft. Moreover, in amendment one to the airplane purchase agreement, defendant Learjet acknowledges plaintiff as the successor to the rights *and obligations* of Borders under the purchase agreement. Even if Mason and Manire wrote checks from their individual bank accounts to pay for the aircraft, it does not change the fact that the purchase agreement is between plaintiff and defendant Learjet. Plaintiff brought the KCPA claim in its corporate capacity and has brought the claims in this lawsuit; Mason and Manire are not individual plaintiffs in this case. Therefore, the court finds that the KCPA claim belongs to the corporation, which does not have standing to sue under the KCPA because it is not a consumer. *See* Kan. Stat. Ann. § 50–624(b); *see also Whittenburg v. L.J. Holding Co.,* 830 F.Supp. 557, 566 (D.Kan.1993) (holding that because Lear jet was titled in corporate name, individual plaintiffs did not have standing to bring KCPA claim even though the Lear jet was purchased with the individual plaintiffs' personal funds; rather, KCPA claim belonged to the corporation). The court therefore dismisses plaintiff's KCPA claim (Count III).

## C. Fraud Claim (Count VII)

Plaintiff's fraud claim alleges that defendants were aware of and had information regarding a manufacturing process defect affecting Learjet 60 aircrafts months before defendants first informed plaintiff of the manufacturing process defect. In support of its contention, plaintiff lists seven pieces of information regarding the manufacturing process defect known to defendants prior to February 15, 2002 (the date plaintiff took possession of the aircraft), and not disclosed to plaintiff until late April or early May 2002. Plaintiff alleges that defendants' false representations of fact and omissions regarding the condition of the aircraft were made intentionally or with reckless disregard for the

truth. Plaintiff claims it relied on defendants' false representations when it purchased and took possession of the aircraft and has been damaged as a result of defendants' conduct.

Defendants argue that plaintiff's fraud claim does not meet the pleading standard set forth in Fed.R.Civ.P. 9(b) because it does not allege a single representation made by either defendant to plaintiff. Defendants also argue that plaintiff fails to plead facts from which the court may infer that defendants owed a duty to disclose information not learned until after plaintiff and defendant Learjet had entered into the contract.

◼ Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, to plead a fraud claim, plaintiff must describe the circumstances of the fraud, including the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by plaintiff's reliance on the false representation. *See Smith v. MCI Telecomms. Corp.*, 678 F.Supp. 823, 825 (D.Kan.1987).

Plaintiff contends that its fraud claim is essentially a "fraud by silence" claim. The elements of fraud by silence are 1) defendant had knowledge of material facts that plaintiff did not have; 2) defendant was under an obligation to communicate the material facts to plaintiff; 3) defendant intentionally failed to communicate the material facts to plaintiff; 4) plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and 5) plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff. *See Sithon Maritime Co.*, 983 F.Supp. at 989 (citing *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 344–45, 918 P.2d 1274 (1996) (quoting *Lesser v.*

*Neosho County Comm. Coll.*, 741 F.Supp. 854, 863 (D.Kan.1990))).

◼ A necessary element of a fraud by silence claim is defendants' duty to communicate material facts to plaintiff. *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F.Supp.2d 1201, 1205 (D.Kan.2001). Kansas courts have held that the duty to disclose arises in two situations: 1) a contracting party that has superior knowledge, or knowledge that is not within the reasonable reach of the other party, has a legal duty to disclose information material to the bargain; and 2) parties in a fiduciary relationship must disclose material information to one another. *Id.; see also DuShane v. Union Nat'l Bank*, 223 Kan. 755, 760, 576 P.2d 674 (1978).

Plaintiff argues that defendants had a duty to disclose any material facts about the aircraft prior to plaintiff accepting delivery of and taking possession of the aircraft on February 15, 2002. Defendants contend that any duty to disclose material facts terminated in March 2001, when the parties signed the purchase agreement. Defendants argue that they did not have a continuing obligation to disclose material facts once the purchase agreement was signed.

◼ "Kansas courts have indeed recognized that a party possessing superior knowledge, who partakes to enter into a contract with a party who lacks such knowledge, has a duty to disclose material facts *at the time of contracting*." *Plastic Packaging Corp.*, 136 F.Supp.2d at 1205 (emphasis added). Plaintiff did not plead in its complaint, nor does it argue, that defendants were aware of the alleged manufacturing process defect when the parties entered into the purchase agreement in March 2001. Rather, plaintiff pleads that defendants knew "[m]onths before defendants first informed plaintiff in late April or early May 2002 of the manufacturing

process defect affecting a number of Lear-jet 60 aircrafts." The court found no Kansas case holding that a defendant has a duty to disclose information that it discovered *during* the performance of a contract. *Id.* Doing so "could open a party not only to contractual damages, but also to tort damages, including, most significantly, punitive damages." *Id.* at 1206. Because plaintiff's fraud claim rests on material facts that defendants discovered during the performance of the purchase agreement, the court finds that plaintiff's fraud by silence claim fails as a matter of law. Plaintiff's fraud claim (Count VII) is therefore dismissed.[2]

**IT IS THEREFORE ORDERED** that defendants' Motion for Leave to File Motion to Dismiss Out of Time (Doc. 53) is granted.

**IT IS FURTHER ORDERED** that defendants' Motion to Dismiss Counts II, III, IV, VII and VIII of Plaintiff's First Amended Complaint (Doc. 46) is granted.

2. The court would apply the same reasoning and finding to plaintiff's negligent misrepresentation claim (Count VIII), which the court previously addressed in its analysis of the economic loss doctrine.